[No. 3501.]

HAGERMAN ET EL. v. BATES ET AL.

1. AGENTS AND AGENCY—RATIFICATION.
One who has constituted another his agent is concluded by the acts of the agent within the apparent scope of the authority, especially if he accepts and retains the benefit of the agent's acts.

2. LACHES.
Negligence in the prosecution of a pending action, as well as negligence in commencing it, may constitute laches.

3. SAME—PLEADING—PRACTICE.
Laches need not be specially pleaded as a defense, but a court ought not to raise the question, *sua sponte*, and rest its decision upon that ground, unless it clearly and satisfactorily appears that the delay was unreasonable.

4. SAME.
A party against whose action laches is suggested as a defense ought to be allowed to explain it away. It should not be imputed to him, on appeal, for want of explanation, when the trial court and counsel for the opposing party both agreed at the trial, that the question of laches was not in the case.

| 24 | 71 |
| 25 | 352 |
| 24 | 71 |
| 15a | 265 |
| 24 | 71 |
| 29 | 61 |
| 24 | 71 |
| a30 | 90 |
| 24 | 71 |
| 35 | 59 |
| 36 | 241 |

5. SAME.

Laches is not dependent upon the statute of limitations.

6. SAME.

In determining the question of laches predicated upon delays in the prosecution of a pending action, the conduct of both parties may be considered.

7. PRACTICE ON REMAND—TRIAL.

The fact that a judgment has been reversed and the cause remanded for the trial of a single issue, does not preclude the raising of any question of law which may fairly be made upon that trial, provided such question was not passed upon in the opinion given on appeal.

8. PRACTICE—TRIAL ON MERITS.

The cause having been decided in the district court upon one point, and its judgment affirmed by the court of appeals upon another, neither of which goes to the merits, and neither being found tenable by this court, the cause should be remanded to the district court for trial upon its merits.

*Appeal from the Court of Appeals.*

IN 1880 there were located in what was then Gunnison County, Colorado, two mining claims; one, the "Little Giant," in January, the other, the "Bonnybel," in July. By an act of the legislature becoming operative May 23, 1881, that portion of Gunnison county in which these properties were situate became a part of Pitkin county. The two claims overlapped, so that there was common to both a triangular strip of ground of about three acres. The owners of the Bonnybel made the first application for a patent, and subsequently such proceedings were taken by the owners of the Little Giant under the statutes of the United States providing for settling conflicting interests in mining claims, that adverse suits were brought and pending,—one an adverse suit proper in the district court of Lake county, the other an action in the nature of ejectment in the form of an adverse suit in the district court of Pitkin county,—each having for its object the recovery of the possession of the conflicting ground. An attempt to file an adverse suit in the district court of Gunnison county, within the statutory period, failed, probably owing to a miscarriage of the mails.

After the suit in Lake county was brought, and before

that in Pitkin county was begun, a receiver's receipt was issued to the owners of the Bonnybel in May, 1881, possibly upon the production of a certificate from the clerk of the district court of Gunnison county that no suit was there pending in support of the adverse filed in the land office. There were three defendants in both of these actions,— Charles J. Moore, Thomas Bracken, and J. M. Daniel, who were the original locators of the Bonnybel claim.

In July, 1881, judgment was rendered in the cause pending in the district court of Pitkin county against all three defendants for the possession of the tract in dispute, which was thereafter in November of the same year vacated as to the defendants Moore and Daniel, upon the ground that the attorney representing them had no authority to enter their appearance, but the judgment against the defendant Bracken still stood. Thereafter Moore and Daniel filed their joint answer, and issues were made up.

While the case was in this condition, and at the July, 1882, term, the parties to the litigation were present in court with their witnesses ready to proceed to a trial. Before the case was set, however, a settlement of the litigation was effected, and the plaintiffs dismissed not only this action, but also the one pending in the district court of Lake county, in accordance with the terms of the agreement of settlement; and four days thereafter a patent for the Bonnybel was issued.

The parties disagreeing as to the terms of the contract, on August 5, 1884, in the district court of Pitkin county the present action was instituted by the then owners of the Little Giant to compel the defendants, as owners of the Bonnybel claim, to perform their obligations under the agreement. In this action there were many steps taken and interlocutory orders made not important to the present discussion, even the bare recital of which would unduly extend the statement and the opinion, and tend to obscure, rather than elucidate, the vital questions in the case.

It may be said, however, that before the trial of this action, which was had in June, 1891, and the argument heard in

September of that year, and decree rendered in March, 1892, the cause, in March, 1890, was transferred, by stipulation, to the district court of Arapahoe county. Before the time of trial the ownership of both claims had entirely changed, and there was a substitution of parties plaintiffs and defendants, the plaintiffs at the time of the trial being the then owners of the Little Giant and the defendants the owners of the Bonnybel.

Upon the part of the plaintiffs it was alleged and contended that the contract, which was the principal point in controversy, was that, after the patent for the Bonnybel was issued, the owners of the latter claim were to convey absolutely and unconditionally to the owners of the Little Giant a portion of the conflicting ground described in the pleadings, and an additional strip adjoining the same for dumping purposes, in consideration that the owners of the Little Giant would first consent to have the judgment against Bracken vacated, and then dismiss both actions against all of the defendants and pay to the owners of the Bonnybel $100, being costs and expenses incurred by them in the litigation. The plaintiffs aver performance by their grantors of their covenants, and the refusal upon the part of the defendants' grantors to perform.

Upon the other hand, the defendants assert that the contract was that their grantors were to convey a small strip of ground in dispute to the Little Giant owners for dumping purposes only, and that plaintiffs and their grantors, by their noncompliance with their part of the contract, had lost even the right to the conveyance of this easement.

The plaintiffs alleged, and their proof was to the effect, that the contract as finally agreed upon was drawn by Charles R. Bell, an attorney, and signed in behalf of the owners of the Little Giant by Taylor & Ashton, their attorneys, and by Bracken himself, one of the defendants, and by Henry Moody, as the attorney for the other two defendants, Moore and Daniel.

The defendants claimed, and their testimony so tended,

that the contract as made was drawn by Moody, and executed by the individual owners of the rival lodes, except by Daniel, and the contract, as signed by all of the parties except Daniel was then delivered to Moody to be sent to Texas for Daniel's signature.

The principal question in the case was, therefore, as to the nature and terms of this contract, and the largest part of the voluminous testimony was directed to this issue. The trial court, though not so finding, assumed, for the purposes of its decision, that the evidence was sufficient to establish the contract as alleged by the plaintiffs, but refused them specific performance, and dismissed their complaint upon the ground that no sufficient authority was shown from Daniel to Moore or to Moody for them, or either of them, to make the settlement alleged, or to sign the agreement declared upon, and that no ratification by Daniel of the acts of Moody or Moore was shown.

Plaintiffs then appealed the case to the court of appeals, and in an elaborate opinion (5 Colo. App. 391) that learned court affirmed the judgment, largely, if not wholly, upon another and different ground, viz: that the plaintiffs' laches in the prosecution of the suit defeated their rights to the equitable relief sought. It should be added, the court stated further that its decision might also be justified upon the other ground that no sufficient authority from Daniel to Moore was shown for the making of the contract. From this judgment of the court of appeals the plaintiffs have appealed to this court, assigning numerous errors. Such additional facts as are material are found in the opinion.

Messrs. ROGERS, CUTHBERT & ELLIS, Mr. HUGH BUTLER and Mr. C. S. WILSON, for plaintiffs in error.

Messrs. THOMAS, HARTZELL, BRYANT & LEE and Messrs. WOLCOTT & VAILE, for defendants in error.

Mr. JUSTICE CAMPBELL delivered the opinion of the court.

From the foregoing statement it will at once be seen that the main issue in the case (the nature and scope of the contract of settlement) was determined neither by the district court nor by the court of appeals, and this is one of the grievances which the plaintiffs urge here. The general rule undoubtedly is, as appellees assert, that the reasons given by a court for its decision are not material, so long as its conclusion is right. As otherwise expressed, very poor reasons are sometimes given for a correct decision. But where the facts upon which the decision is based are insufficient to support the conclusion, then not faulty reasoning but the unwarrantable effect given to the facts, constitutes the prejudice. After a most diligent examination of the entire record in this case, including all the evidence, we are satisfied that the judgment against the plaintiffs ought not to stand, and that the grounds given by both courts are not tenable.

The learned judge of the district court held that the employment of Moody by the owners of the Bonnybel as their attorney in the ejectment action did not, as an incident, carry with it the power to compromise the suit or to agree to a conveyance of real estate. Upon this as a legal proposition the authorities are conflicting, and possibly the ruling is right. However that may be, we do not find it necessary to express our views upon it.

Previous to the making of the contract which is the subject of the controversy here, Daniel was living in the state of Texas. He knew that an application for a patent had been made by his colocators in their own and in his behalf, was conversant with the different steps in relation thereto, and cognizant of the obstacles thrown in their way by the owners of the Little Giant claim. The three locators were desirous of securing a patent at the earliest date possible, and, as is manifest from the correspondence passing between them, thought that it might be facilitated by applying for a patent during the inclement season of the year when the

deep snows and the stormy weather would probably render opposition less effective. Daniel had written to Moore, and the correspondence is in the record, and had authorized him, as his co-owner, to act for him in securing the patent, to employ counsel to represent them in actions that might be brought, and, to quote the exact language, wrote: "I request you to attend to my interests jointly with your own to protect the property and I will pay my part of the cost." Moore unquestionably construed this as giving him full authority, so acted, and, among other things, employed Moody as attorney for him and Daniel, while Bracken had separate counsel for himself. Moody and Moore were both present at Aspen, and participated in the negotiations that led up to the settlement, whatever it was. Bracken was present in person, while Daniel was absent. In the negotiations the owners of the Little Giant certainly supposed that Moore was representing not only himself but Daniel also; and it is not reasonable to suppose that the owners of the Little Giant would make any agreement of compromise and dismiss the suits unless they supposed, and Moore had so represented, that he had authority to act for Daniel and that Moody, as their attorney, acted for them both.

After the settlement was made and the actions dismissed on July 28, 1882, Moore wrote from Leadville to Daniel in Texas in the following August, stating that the differences between the owners of the two claims were adjusted, that the various actions were dismissed, and all obstacles to the securing of a patent removed, and asking Daniel to remit his share of the costs and expenses incurred in the litigation. He stated that, as one result of the compromise, the owners of the Bonnybel after receiving a patent were required to convey for surface purposes only to the owners of the Little Giant a certain described parcel of the conflicting ground. In the letter Moore also stated that he had signed the agreement of settlement for Daniel, as well as for himself.

In reply to this letter Daniel objected to the item of costs, but did not refer to the settlement, either by way of objec-

tion or approval, though advised by Moore that an agreement in his behalf had been made whereby an easement in the property was to be conveyed after the patent was issued.

Now we think that the facts just mentioned, especially when taken in connection with the circumstances of this case which our examination of the record has revealed, are sufficient, unexplained and uncontroverted by Daniel, to constitute Moore his agent with power to make the contract, if any such was made, which plaintiffs set up in their complaint. It is true Moore denies that such power was conferred, and while at first denying any previous authority from Daniel to represent him, when confronted with this correspondence he admitted the receipt of Daniel's letters, and writing to him, as above set forth, and these admissions overcome his naked denial. There is not a word in Daniel's letters questioning such authority. His testimony is not in the record; and when his son George M. Daniel — who throughout this litigation in our judgment is to be considered the same as J. M. Daniel, his father, and who seems to have had an equitable interest in the original location of the Bonnybel, and to whom the father transferred his entire record title before this action was begun—filed his answer, there was no plea or averment therein of the lack of authority in Moore to make the contract, but only that no such contract as alleged was, in fact, made.

But if we should be mistaken in our conclusion as to Moore having originally been given such authority, we are of opinion that Daniel ratified the agreement, or at least subsequently recognized that Moore had authority to make such an agreement as is declared upon. But, say appellees, and so said the trial court, Daniel could not ratify a contract of which he never heard until this action was instituted, and there is no evidence that previously he ever knew of plaintiffs' claim. It is true that in his letter of August, 1882, Moore informed Daniel that the contract contemplated a conveyance for surface purposes only. He was advised that a contract had been made in his behalf that called for a con-

veyance of an easement. By his silence and acquiescence, he acknowledged that authority existed therefor. In accepting the fruits which the contract of settlement gave, which secured the dismissal of two actions, and enabled the owners to get a patent for the Bonnybel without further opposition from their antagonists, it would be inequitable to permit Daniel to retain its benefits and repudiate its burdens in whole or in part. So long as he retains the advantages, he should be held, also, to those provisions of the contract favorable to his opponents which secured for him the corresponding benefits. The other alternative would be for him to restore, or offer to restore, the *status quo*, and put the owners of the Little Giant with respect to the litigation in the same position they were in before the settlement was made. But, as the record discloses, this cannot now be done, and no such offer has been made, and it is in accordance with good conscience to hold Daniel to the contract as made.

There is still another reason for so holding. Unquestionably, Daniel clothed Moore with apparent authority to represent him in this litigation, and in this settlement. Previous to the application for a patent, and in the doing of assessment work, and in the various steps preliminary to making application for a patent of the Bonnybel, Moore seems to have acted for Daniel with the latter's full authority and acquiescence, and to the knowledge of the owners of the Little Giant. When, therefore, Moore was acting within the scope of his apparent authority as Daniel's agent, and made a contract for his principal, relying upon which others gave up valuable rights, and Moore thereafter misinformed Daniel as to the true nature of the contract, Daniel, rather than innocent third parties, should suffer. Epecially is this principle applicable in this case, where Daniel retains the fruits of the contract, and when suit is brought, and he is directly acquainted with plaintiffs' claim, makes no offer to restore them to the condition they were in before the contract was made. Mechem on Agency, §§ 153 *et seq.* 298, 311; Story on Agency, chap. 6.

Coming now to the decision of the court of appeals, we find it predicated upon the plaintiffs' laches in the prosecution of the suit. As a matter of law and practice, we think the court was right in holding that laches may consist not only in negligently instituting a suit, but also in negligently prosecuting it after it has been begun. The authorities referred to by the court of appeals sustaining this proposition are: *Sullivan v. Portland & Kennebec R. Co.*, 94 U. S. 806; *Johnston v. Standard Mining Co.*, 148 U. S. 360.

It seems to be in accordance with the better practice, also, that laches need not be specially pleaded as a defense, but may be raised by counsel at the trial, or taken cognizance of by the court of its own motion at any stage. In this case no defense of the kind was pleaded, and it seems not to have been suggested or considered as in issue by the trial court or by counsel until after the case reached the court of appeals, and then for the first time in the brief of counsel for defendants. When the defendants were putting in their testimony, an objection to a question was interposed by counsel for plaintiffs upon the ground, *inter alia*, that the particular testimony sought to be elicited was not proper because it related to the question of laches. The learned district judge remarked that no question of that kind was in the case, whereupon one of the counsel for defendants replied that no question of that kind arises.

While, as we have stated, the defense of laches need not be specially pleaded by the defendant, still, when not pleaded, unless it clearly and satisfactorily appears to the court from the evidence that there has been an unreasonable delay in prosecuting the suit, the court of its own motion should not rest its decision upon that ground. Applying this principle to the case at bar, especially in the light of what occurred upon the trial in the district court concerning laches to which we have just referred, we think that defense was not satisfactorily made out. We must not be understood as intimating that counsel for defendants purposely misled the plaintiffs; but what we do say is that the statement made in the trial

court was calculated to mislead, and probably, in accordance with the contention of plaintiffs' counsel, did mislead, them into supposing that no such defense was to be relied upon. While this declaration of defendants' counsel might not preclude the court from resting its decision upon the ground of laches, still it would naturally be interpreted by plaintiffs as relieving them of the necessity of introducing evidence to explain any apparent laches; and the decisions are to the effect that this may be explained, and certainly the party against whom any such defense is suggested ought to have full and ample opportunity to make the necessary explanation.

In the opinion of the court of appeals is found a marshaling of the facts as plausible, and an argument as strong, to sustain this defense as can possibly be presented. There are certain other facts, however, apparent in this record which, though they may not have been overlooked by the learned court, were probably not deemed of sufficient consequence to merit notice; but which, to our minds, place plaintiffs' conduct of the suit in a light quite different from that in which the opinion views it.

Laches is not dependant upon the statute of limitations. Mere lapse of time and staleness of the claim are material questions that enter into the definition of the term, but of themselves are not conclusive. This suit was begun in 1884, and notice of *lis pendens* duly filed in the recorder's office. Not much progress was made therein until 1889. It should be said, as appears from the testimony of plaintiffs' witnesses, that the so-called Bell contract, if made, has either been lost or mislaid. Taylor, the attorney, states that the day after it was executed he took it into court, and after dismissing the action left it with the clerk to be filed in the records of the case; and, so far as the testimony in this case is concerned, the contract has not from that time been seen by any witness who has testified.

During the early history of the case it seems that both parties made more or less diligent efforts to ascertain the

whereabouts of this contract, and whether or not it was made.    A number of states of the Union were visited by representatives of these parties with a view to securing testimony in the case, and more or less ample preparations were made for the trial.    Various intermediate questions were disposed of, continuances had from term to term, some by agreement of the parties, and apparently no continuances were granted against the opposition of either side, and all evidently by mutual consent.

While it may be true that negligence of the defendants does not excuse lack of diligence upon the part of plaintiffs, yet it is a circumstance proper to be taken into consideration that in this case the defendants themselves took no active steps to bring the case to trial.    They were in default in the filing of their answers,—at least would have been without an extension of time secured from the plaintiffs, or by order of the court.

The present plaintiffs bought into the Little Giant in 1885, the present defendants into the Bonnybel in 1887, charged with notice of plaintiffs' equities.    Defendants' purchase was made after it was ascertained that the property in conflict was of value.    That fact was ascertained and ore discovered not by expenditures of the defendants upon the Bonnybel claim, but by certain development work done upon other property under order of the court in litigation pending between what is known as the "apex and side line" interests in the somewhat famous litigation of that character in this state before and during the pendency of this action. Hagerman, one of the plaintiffs herein, acted with the defendants, and others of the side line parties to that litigation, and his money, in proportion to the interest he had, was employed in the development work which led to the discovery of the value of the Bonnybel property.

The defendant Moore in August, 1889 was dismissed from this action, and, so far as appears, the plaintiffs, in entire good faith, appealed from that order of dismissal to the court of appeals, where at the April, 1892, term of the court

the appeal was dismissed upon the ground that the order was not in the nature of a final judgment: 2 Colo. App. 83. This accounts for more than two years of delay. After that appeal was dismissed, there seems to have been no lack of diligence shown by the plaintiffs in prosecuting the suit.

A part of the delay is to be accounted for, also, in the fact that the plaintiffs at one time sent their attorney to Aspen who conferred with one of the attorneys for the defendants, and after such conference reported to his clients his opinion as to their inability to prove the contract relied upon, and one of the plaintiffs then wrote to the defendants' attorney that he had concluded to take no further steps in the litigation. Afterwards, however, the plaintiffs, as they state, becoming satisfied that their attorney had been deceived, determined, and so informed the defendants, that thereafter they would push the case, and this was done. There are other facts and circumstances apparent in the record which might be noted tending to explain the apparent laches of the plaintiffs, but we do not think it necessary further to notice them.

If the contract, as plaintiffs set it up, was made, it was the duty of the defendants to make conveyance after the patent was issued. While it is true that the patent was issued four days after the settlement, it was delivered to Moore by the register of the land office some time in September, 1882, and was not put upon the records of Pitkin county by Moore until April, 1884, and the plaintiffs' testimony is to the effect (and there is no proof to the contrary) that information of the issuance of the patent was not acquired by the owners of the Little Giant until a very short time before this suit was begun in August, 1884. There was no negligence, therefore, in instituting this action, for it would be inequitable to impute to plaintiffs negligence in not sooner learning of the issuance of patent when defendants themselves for nearly two years withheld the same from the record, the recording being the usual

means of imparting notice of title. Considering the facts
to which we have adverted as tending to explain the alleged
lack of diligence in prosecuting the suit after it was begun,
and considering what was the natural effect of the statement
of defendants' counsel that laches was not considered in the
case which obviated the necessity for introducing testimony
explaining any negligence of this character that might be
imputed to them, we are satisfied that the decision should
not be placed upon that ground. If as matter of fact, the
contract as set up by plaintiffs was made, they are entitled
to recover, and their equities should not be defeated, either
upon the ground of alleged lack of authority from Daniel, or
that plaintiffs themselves have been guilty of laches in prose-
cuting the suit. In other words, there should be a decision
of this case upon its merits, which, up to the present time,
has not been had, and the plaintiffs have a right to a deter-
mination as to the main issue in the case. Upon this record
we are clearly of the opinion that Moore had authority to
bind Daniel by a contract such as is set up by plaintiffs, and
are further of the opinion that plaintiffs are not chargeable
with laches in beginning or prosecuting the action.

The testimony upon the only other issue left to be deter-
mined is so irreconcilable, and in the nature of things must
necessarily so largely depend upon the credibility to be given
to the witnesses who give oral testimony, that we do not
feel called upon to determine it from the record before us.
It is peculiarly a case where such a decision should be made
by a judge, or jury, who sees the witnesses as they testify,
and observes their manner and appearance upon the witness
stand.

The rulings of the trial court upon Moore's application
for a dismissal of the action as to him, were somewhat
unstable. At the first, it was denied, and finally granted.
After he sold his interest in the Bonnybel claim, his grantees
in some way, and for some reason not disclosed by the record,
were made parties defendants, whether because of the con-
veyance of Moore, and as substituted for him, it is impossi-

ble to determine, for the same persons were grantees also of Bracken and Daniel.

A review of this ruling is not pressed upon us, and possibly no exception was taken to it. If it should be considered that Moore's grantees had been substituted for him, possibly the question is no longer material. We mention it now merely to suggest that, in case of another trial, if the parties so desire and it is considered important, they may get a ruling of the trial court to determine whether the present defendants are in court as purchasers of, and as substitutes in the suit for, Moore, Bracken and Daniel, or only one or more of them.

The judgment of the court of appeals is therefore reversed, and the cause remanded with instructions to direct the district court, if any further steps are taken in the action, to proceed in accordance with the views expressed in this opinion and to grant a new trial upon the following issue of fact only : What was the contract of settlement made between the owners of these two claims, or their agents and representatives, when the action in the district court of Pitkin county was dismissed?

*Reversed.*

### ON PETITION FOR REHEARING.

PER CURIAM: Counsel for appellees have filed an elaborate brief in support of their petition for rehearing, comprising numerous specifications of errors of law and fact which it is said the original opinion contains. No essentially new legal propositions are advanced, but merely an amplification, in some particulars, of those heretofore argued.

With the conclusions both of law and fact reached and expressed by us in the former opinion, we are still content; but considering the importance of the interests here involved, and with a view of correcting mistakes of fact, if any, into which we were led, we have with care examined each of the points made and again considered the record. In no respect do we find that the opinion mistakes any material fact; but

there is one matter to which we desire to advert: Counsel say that there is error in the statement that before the trial there was a substitution of parties plaintiffs and defendants,— at least so far as the defendants are concerned.    We are told that this statement is an important one, and, if true, properly weighs against the defendants.    It is said that no application was made by the plaintiffs for leave to substitute new defendants, and, in fact, that no order therefor was obtained.

After this petition for rehearing and argument in its support were filed, counsel for appellants applied to this court for leave to file a supplemental transcript of the record of the district court, showing that such leave was applied for and such order obtained; but we denied the application upon the ground that it was not material.    The facts are, as the present record itself shows, that such a substitution was made, whether with, or without, proper authority, and the appellees appear not to have objected to the application, or excepted to the order, if made, or assigned any error thereto. For this, if for no other reason, they are not in a position now to object.

There ought not to be any misapprehension of just what was decided upon the original hearing; but the appellees not only complain that if a new trial be had, it should not be restricted to the one question of fact touching the nature of the contract of settlement; but they further insist that they should not be prevented from raising any legal objections that may properly arise upon the trial of that issue, from which, they say, appellants may insist our former opinion has cut them off.

That there may be no further controversy as to this point, we say that after it was held by us that, if a contract such as the plaintiffs set up was entered into, the plaintiffs' right to recover could not be defeated because of the alleged lack of authority from Daniel to make it (which formed the basis of the decision of the district court), or of plaintiffs' laches in prosecuting the action (upon which the court of appeals rested its judgment), it was in accordance with good practice

to limit plaintiffs in the event of another trial to the only remaining question of fact in the case. There was no longer any reason for requiring the district court to hear further evidence, and again pass upon the questions of fact after this court from the record before it had resolved these two issues in favor of the plaintiffs.

But in limiting the new trial to the single issue of fact, the defendants are not, as they profess to fear, precluded from raising any questions of law, that fairly arise upon the trial of that issue, except, indeed, such questions as may have been expressly passed upon and declared in the former opinion. To comply with the suggestion of the appellees, and at this time settle the legal propositions (other than those that have been determined by us, incidentally or otherwise, in the former opinion), which may, or may not, arise at another trial, would be altogether improper for the sufficient reason, if none other existed, that it is impossible now to anticipate what they may be.

The former opinion is adhered to and the rehearing denied.

*Rehearing denied.*