No. 19,117.

RICHARD DOUGLAS ROBBINS *v.* PEOPLE OF THE
STATE OF COLORADO.
(350 P. [2d] 818)

Decided March 28, 1960.   Rehearing denied April 18, 1960.

Messrs. ZARLENGO, ZARLENGO & SEAVY, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. NORMAN H. COMSTOCK, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

PLAINTIFF in error, hereinafter referred to as defendant, was charged in the trial court of the crime of first degree murder. The jury which heard the issues framed by the information and the defendant's plea of not guilty, returned a verdict of guilty of murder in the first degree and fixed the penalty at life imprisonment. Judgment and sentence entered accordingly and the defendant seeks review by writ of error.

The incident out of which the case arises involves the killing of one Gregory Francis Warner. Pertinent facts which are not in dispute are as follows:

The defendant and the deceased Warner started out on the evening of May 18, 1958, to commit an armed robbery. They selected as their intended victim one Myers, a man 68 years of age whom they observed as a pedestrian on his way from work to his home at 1356 Lafayette Street in Denver. A short distance from this address the defendant and the deceased accosted Myers and informed him that "this is a stickup." One of the

holdups, the deceased, stood in front of the victim, Myers, and placed a knife against his body. The other holdup, the defendant, stood behind the victim with a pistol at his back. Myers testified that the man with the knife * * * "poked me a few times, but it didn't go — it didn't hurt me, but when he got up just about here, below the right breast, why, it stuck me, and I thought I'd better say something, and I said 'Oh, go on', raised up my hands."

Myers testified that he then stood there for a "second or two" when the defendant from behind struck him a blow on the head "that made me slump forward a little bit, like that; and it was toward the left, in the rear toward the back of my head, where he hit me. And I done like that, and about two or three seconds, I heard the shot after that, two or three seconds. It didn't discharge just at the moment he hit me * * * ." The bullet fired from the gun in the hands of the defendant struck his accomplice who was in front of Myers, causing his death.

Defendant's story, told to the police, was that he had become fearful that his accomplice, a young man 16 years of age, would stab Mr. Myers with the knife and that he sought to withdraw from the attempted robbery in order to save the life of Myers. With this purpose in mind he struck the blow on the latter's head with the hand in which the gun was held; that the gun was accidentally discharged and the bullet killed his partner in the attempted robbery who was standing in front of the victim.

The information was filed on May 23rd, 1958. A plea of not guilty was entered June 3rd, 1958. The trial of the case began October 21, 1958, and the jury was accepted and sworn to try the issues on October 22, 1958.

On the morning of October 23rd, and before any evidence was taken, the following took place (inter alia) outside the presence of the jury: (Mr. Zarlengo representing the defendant.)

"MR. ANTHONY F. ZARLENGO: Judge, I just got a call a few minutes ago from my son, who states that he got a call from a Mrs. Roberts, a registered nurse, who claims that she knows the defendant, that they lived in the same apartment and that he has been having epileptic fits; and I don't know what the scope of this is, it being the first time we have heard about it. She just called in this morning.

"We would like to have the court appoint a doctor to examine the boy.

"THE COURT: To see whether or not he is subject to epileptic fits?

"MR. ZARLENGO: To see whether or not he is subject to fits and whether or not he is capable of forming any intent to rob, and whether he is susceptible to domination by someone else, or suceptible to fears of some sort. I think, in view of the seriousness of the case, that we should have the benefit of that medical testimony. Now, I haven't interviewed the nurse, but she just called in this morning to give the information. I don't mean to delay the trial at all, Judge.

\* \* \*

"MR. ZARLENGO: Well, don't you think we ought to have some preliminary examination by the doctor to see whether or not it warrants a change of plea? I don't know, Judge; I am just not informed, until I get the benefit of some expert advice. I thought possibly we could get her down here this morning, any one Your Honor wants to appoint, and at least get a preliminary opinion from the doctor, I could then be advised on whether to stand on the present plea or whether to consider any other pleas. I think that before making any change of plea, we should have the benefit of that advice.

\* \* \*

"THE COURT: The thing that I am wondering is that if he has been out there in the jail since May, if he had

anything like that, it would seem to me he would have had them during the time in jail."

The Court, following the conference in chambers, ordered a recess, appointed a psychiatrist to examine the defendant and permitted a further more extensive examination of defendant at the Colorado General Hospital. Following a report by the appointed expert indicating that the defendant was not subject to epilepsy, and was not insane, the court ordered the trial to continue, and denied a motion by counsel for the defendant to order a mistrial and permit the entry of an additional plea of not guilty by reason of insanity.

At the conclusion of all the evidence counsel for defendant moved for a directed verdict of not guilty upon all offenses included in this information except the crime of involuntary manslaughter. This motion was denied.

Counsel for defendant argues as grounds for reversal in this court that:

1. The trial court should have ordered a mistrial, and the right to plead not guilty by reason of insanity, after the jury was selected and sworn to try the case.

2. The trial court committed prejudicial error in instructing the jury on "flight" for the reason that it was not necessary in the instant case.

3. The trial court erred in refusing defendant's request for a directed verdict as to all issues except that of involuntary manslaughter.

*Questions to be Determined*

First: *Where four and one half months after a plea of not guilty to a charge of murder has been entered, a jury selected and sworn to try the case and counsel for the defendant then receives a phone call advising him that defendant may be subject to epilepsy, and thereupon requests the court to order a mistrial and to permit defendant to enter a plea of "not guilty by reason of insanity"; is the refusal of the trial court to grant such requests an abuse of discretion where the record discloses that the trial court carefully investigated the mat-*

*ter in the course of which competent medical advice was sought and received following an examination of the defendant?*

■ The question is answered in the negative. The plea of not guilty by reason of insanity is controlled by C.R.S. '53, 39-8-1 (1) (Cum. Supp. 1957), and is as follows:

"If one of the defenses of the defendant is insanity, it must be pleaded at the same time with other pleas, unless it is to be the sole plea to the charge. It must be pleaded orally, either by defendant or by his counsel, in the form, "not guilty by reason of insanity at the time of the alleged commission of the crime." A defendant who does not thus plead not guilty by reason of insanity shall not be permitted to rely on insanity as a defense to any accusation of crime; provided, however, that evidence of mental condition may be offered in a proper case as bearing upon the capacity of the accused to form the specific intent essential to constitute a crime."

In *Inglis v. People,* 92 Colo. 518, 22 P. (2d) 1109, and *Mundy v. People,* 105 Colo. 547, 100 P. (2d) 584, it was held that one desiring to rely upon insanity as a defense is bound to comply with statutory requirements concerning the entry of such a plea, and that a statute requiring that a special plea as to insanity be entered to be followed by a period of observation, does not deny a defendant any constitutional rights.

■ Whether a mistrial should have been ordered, and whether a plea of not guilty by reason of insanity should have been allowed after the commencement of the trial, were questions which rested within the sound discretion of the trial court. *Gearhart v. People,* 113 Colo. 9, 154 P. (2d) 47; *Abshier v. People,* 87 Colo. 517, 289 Pac. 1081. We are not justified in interfering with the exercise of that discretion by the trial court except upon a showing of an abuse thereof. No such showing is made by the record before us in this case.

Second: *Where a defendant is accused of murder and the undisputed evidence discloses that on the second day following the crime he was arrested at his residence and that he was participating in an attempted robbery when the killing took place, and signed a detailed statement admitting the fact that he held the gun at the time the shot was fired which resulted in the killing; was the giving of a "flight" instruction error requiring reversal of the judgment of guilt of first degree murder?*

■ The question is answered in the negative. Every part of the evidence essential to prove active participation by the defendant in the attempted robbery of Myers was admitted by the defendant. From the witness stand he approved his written statement to police officers, and did not challenge any question or answer contained therein.

Under the facts shown by this record, the giving of the instruction on "flight" could not possibly have prejudiced the jury against the defendant, or in any manner have given additional weight to the showing on behalf of the people. The only matters to which the instruction had any relevance were freely admitted by the defendant. We agree with the statement contained in the opinion of this court in *Robinson v. People,* 114 Colo. 381, 165 P. (2d) 763, to the general effect that an instruction on "flight":

" * * * is rarely advisable and should never be given unless the peculiar facts of the case appear to make it essential. It generally impinges upon the rule that particular portions of the evidence should not be singled out and emphasized by special instructions. Again, most of the authorities which assume to enumerate the essentials of this element are based upon the peculiar facts of a given case and may not be taken as generally applicable to all."

Nevertheless, in that opinion, giving of the "flight" instruction ·was held not to be reversible error. The facts in the instant case are somewhat similar to those

present in the case cited. We have no hesitancy in concluding that in this case there was no prejudical error committed by giving the instruction.

Third: *Under the fact shown by this record, did the trial court err in refusing to grant the motion made by counsel for defendant for a directed verdict of not guilty upon all issues other than those related to the crime of involuntary manslaughter?*

█ The question is answered in the negative. Counsel for defendant argues that C.R.S. '53, 40-2-3 is inapplicable to the case at bar for the reason that the defendant had withdrawn from the robbery attempt, and accidentally killed his accomplice in a successful effort to save the victim of the robbery from the deadly assault persisted in by the deceased accomplice in the robbery plot.

The said statute, in pertinent part, reads as follows:

" * * * All murder * * * which is committed in perpetration or attempt to perpetrate any * * * robbery * * * shall be deemed murder of the first degree; * * *."

In the early decision of *Andrews v. The People,* 33 Colo. 193, 79 Pac. 1031, it was said concerning this statute:

"The purpose of the statute was to make every homicide committed in the perpetration or attempt to perpetrate certain felonies murder, which may be punished by death, if the jury so determine, without regard to malice, deliberation or premeditation. When, therefore, the proof was undisputed that the homicide was committed in an attempt to perpetrate robbery which the defendants had conspired to commit, it was not necessary to prove any facts from which malice, deliberation or premeditation could be inferred."

Since the Andrews case (supra) was decided, there have been numerous cases in this court in which a defendant has been convicted of first degree murder for killing persons while in the perpetration of a felony mentioned in the statute. No good purpose would be served in citing these cases. Suffice it to say that the

purpose of the statute as defined in the Andrews case has not been changed, nor has the application thereof been limited, by judicial decision since that opinion was announced.

█ It is true that none of the reported cases involved the killing by one robber of his accomplice in that crime. If it is the contention of counsel for the defendant that under no circumstances could the killing of a robber by his confederate in the crime be murder of the first degree under the statute, it is sufficient to say that the act of the legislature makes no such exception. Such an exception cannot be read into the statute under the guise of judicial interpretation.

It is significant to note that the jury had an opportunity to pass upon the truthfulness of defendant's story in which he claimed that the gun was accidentally discharged while he was attempting to save the life of the man he had undertaken to rob. The members of the jury were free to believe or disbelieve the defendant's story. The trial court gave an instruction on involuntary manslaughter which read as follows:

"If you do not find the defendant guilty of murder of the first degree, it will be your duty to determine whether or not he is guilty of involuntary manslaughter, as defined and explained in these instructions.

"A statute of the state provides as follows:

" 'Involuntary manslaughter shall consist in the killing of a human being without any intent so to do; in the commission of an unlawful act or a lawful act which probably might produce such a consequence, in an unlawful manner. Provided, always, that where such involuntary killing shall happen in the commission of an unlawful act which in its consequences naturally tends to destroy the life of a human being, or is committed in the prosecution of a felonious intent, the offense shall be deemed and adjudged to be murder.'

"If you find the defendant guilty of involuntary manslaughter, you should so state in your verdict.

"If you do not find the defendant guilty of murder of the first degree or of involuntary manslaughter, you should find the defendant not guilty, and should so state in your verdict."

No further instruction in amplification of the theory of the defense was tendered. No instruction was requested dealing with the question of what might constitute a "withdrawal" by the defendant from the perpetration of the robbery. The involuntary manslaughter instruction above quoted was apparently deemed sufficient by his learned counsel to cover the theory of the defendant.

As stated by this Court in *Swanson v. Martin,* 120 Colo. 361, 209 P. (2d) 917:

" * * * the court or jury was not required to accept plaintiffs' testimony as to defendant's condition and his knowledge thereof as establishing the truth of the facts to which such testimony was directed, even though it is not contradicted by other direct evidence. * * * Reasonable inferences from circumstances tending to discredit or weaken such testimony should be considered."

In addition to the involuntary manslaughter instruction above quoted, the trial court gave a proper instruction on murder committed in the perpetration of a robbery.

The jury resolved the issues as to whether the killing took place in the course of the robbery, or whether it resulted from an accidental discharge of a gun in the defendant's hands as he attempted to save the life of his robbery victim following the secret withdrawal by him from further participation in the crime of robbery.

We find no error in the trial of the cause and the judgment is accordingly affirmed.