The PEOPLE of the State of Colorado, Petitioner–Appellant,

v.

In the Interest of D.F., Juvenile–Appellee,

And

Concerning Z.A., Respondent–Appellee.

No. 96SA217.

Supreme Court of Colorado, En Banc.

Feb. 18, 1997.

A. William Ritter, Jr., District Attorney, Second Judicial District, Nathan B. Coats, Chief Deputy District Attorney, Denver, for Petitioner–Appellant.

David F. Vela, Colorado State Public Defender, Matthew S. Connell, Deputy State Public Defender, Denver, for Juvenile–Appellee and Respondent–Appellee.

Justice HOBBS delivered the Opinion of the Court.

In this interlocutory appeal, brought pursuant to section 16–12–102(2), 8A C.R.S. (1996 Supp.), and C.A.R. 4.1, the prosecution seeks review of an order entered by the Juvenile Court of the City and County of Denver suppressing evidence of a concealed weapon found on the juvenile defendant, D.F. The juvenile court determined that reasonable suspicion did not exist at the time officers effected the investigatory stop. Based on the totality of the circumstances, we hold that the police officers did have a reasonable suspicion to stop the juvenile and seize the shotgun he was carrying. Accordingly, we reverse the juvenile court's suppression order.

I.

On the afternoon of February 5, 1996, the Denver Police Department received an anonymous tip that one of three young males walking southbound in the area of 1800 South Stuart Street was carrying a concealed weap-

on, possibly a BB rifle.[1] One of the males was dressed in a poncho. Two officers responded to the call and went to the location where the three individuals were last seen. Not finding them there, the officers continued southbound until they came to Harvey Park, in the vicinity of South Stuart Street and West Evans Avenue. There the officers spotted three young males, who appeared to be about thirteen years old, walking together in the park. One of them was wearing a brown poncho and one was walking stiff-legged. The juveniles were traveling toward Kunsmiller Middle School, which is adjacent to the south side of the park. It was about 1:30 on a Monday afternoon. Several adults and approximately ten to twelve children between the ages of two and five were in the playground at the time. The juveniles were traveling towards the neighborhood school. The officer did not draw his own weapon because he "was in fear of the safety of these little children that were there."

On both direct and cross-examination at the suppression hearing, Officer Paul Murawski (Officer Murawski) testified that D.F. was walking as though he were concealing something in his pants. On direct, he testified: "I also noted that one of these parties—in this instance, [D.F.]—was walking and his leg was very stiff such as to indicate that he had—he either was not able to bend it or something was preventing him from bending his leg." During cross-examination, Officer Murawski testified that D.F "was walking in a fashion that in [his] ten years with police experience indicate[d] to [him] the possibility of someone concealing something in their pants, unless that party would happen to be disabled." Officer Murawski also testified that he did not observe any other group of three males or any other individuals wearing ponchos in the park. The juvenile court did not find that Officer Murawski's testimony should be disbelieved in any respect.

The officers drove the police car onto the lawn close to the juveniles and exited the

vehicle. One of the officers ordered the juveniles to stop and put their hands in the air. D.F. stopped and put his hands in the air. One of the officers then observed what appeared to be a shotgun protruding from the waistband of the pants D.F. was wearing. The gun was partially concealed in D.F.'s left pant leg, with the barrel of the shotgun almost to his ankle and the stock of the shotgun high above his waist. D.F. was subsequently arrested for carrying a concealed weapon, a .12 gauge Winchester shotgun, in violation of section 18–12–105(1)(b), 8B C.R.S. (1986 & 1996 Supp.). The gun was unloaded, but D.F. had eight rounds of live ammunition in his pants pockets. One of the other two juveniles surrendered a pump-action BB rifle to the officers.

D.F.'s attorney filed a motion to suppress all evidence obtained after D.F. was stopped, claiming that the stop was unconstitutional because there was no articulable and specific basis in fact to suspect that criminal activity had taken place, was in progress, or was about to occur.

The juvenile court agreed, stating that the stop was not supported by reasonable suspicion and, consequently, was in violation of D.F.'s Fourth Amendment rights. On June 5, 1996, the juvenile court issued its order granting the motion to suppress. The prosecution filed this interlocutory appeal.

## II.

We determine that the police officers were justified in making the investigatory stop and disarming the juveniles.

### A.

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. *See People v. Greer*, 860 P.2d 528, 530 (Colo.1993). However, absent probable cause to arrest, a police officer may stop a person for investigatory purposes under narrowly defined cir-

---

1. Section 38–129 of the Revised Municipal Code of the City and County of Denver, provides in relevant part:
    (a) It shall be unlawful for any minor to buy, carry on their person or discharge any air gun,

gas operated gun or spring gun discharging metal pellets or BB shot.
    Denver, Colo., Rev. Municipal Code § 38–129(a).

cumstances. *See People v. Garcia,* 789 P.2d 190, 191 (Colo.1990). Such a stop must be supported by the factual foundation required by *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971).

In *Terry,* the Supreme Court held that to justify a stop, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 392 U.S. at 21, 88 S.Ct. at 1880. Furthermore, the *Terry* Court established that "police may stop an individual for brief questioning and perform a protective search based upon a reasonable suspicion that the suspect is engaged in criminal activity and a reasonable belief that he is armed." *United States v. Clipper,* 973 F.2d 944, 946 (D.C.Cir.1992) (citing to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

In *Stone,* we held that a police officer, having less than probable cause to arrest, may temporarily detain an individual for certain investigatory purposes, provided that the following conditions exist:

> (1) the officer must have a reasonable suspicion that the individual has committed, or is about to commit, a crime; (2) the purpose of the detention must be reasonable; and (3) the character of the detention must be reasonable when considered in light of the purpose.

174 Colo. at 508–09, 485 P.2d at 497 (the three-prong *Stone* test); *see* § 16–3–103, 8A C.R.S. (1986).[2]

■ This case concerns the first of the three conditions which must be satisfied to justify a *Stone* stop,[3] that an "officer must have 'an articulable and specific basis in fact' for suspecting that an individual" is committing, has committed, or is about to commit a criminal activity. *People v. Contreras,* 780

P.2d 552, 555 (Colo.1989) (quoting *People v. Savage,* 698 P.2d 1330, 1334 (Colo.1985)). To determine whether an investigatory stop was based on a reasonable and articulable suspicion, a court must take into consideration the facts and circumstances known to the officer at the time of the intrusion. *See Greer,* 860 P.2d at 530; *see also Terry,* 392 U.S. at 21–22, 88 S.Ct. at 1880 (when judging the facts against an objective standard, the court must ask "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?").

■ The facts known to the officer at the time of the encounter, "taken together with rational inferences from these facts, must create a reasonable suspicion of criminal activity," in order to justify the intrusion into the individual's privacy caused by the investigatory stop. *Greer,* 860 P.2d at 530. The information contained in the tip, in addition to the corroborating observations made by the officers, must be considered together to determine whether, under the totality of the circumstances, grounds for an investigatory stop existed. *See Contreras,* 780 P.2d at 555.

■ Standing alone, an anonymous tip lacks the "indicia of reliability sufficient to establish reasonable suspicion." *Garcia,* 789 P.2d at 192. However, the anonymous tip together with corroborating observations by the officers "may provide a specific and articulable basis in fact to suspect that an individual is engaging in," has engaged in, or is about to engage in criminal activity. *Id.*

In the case before us, defense counsel argued to the juvenile court following the officer's testimony that the police must "corroborate the anonymous tip by viewing conduct that is criminal." The juvenile court apparently agreed. Citing *Alabama v. White,* 496

---

**2.** Colorado has codified this test under section 16–3–103, which provides:

> *Stopping of suspect.* (1) A peace officer may stop any person who he reasonably suspects is committing, has committed, or is about to commit a crime and may require him to give his name and address, identification if available, and an explanation of his actions. The stopping shall not constitute an arrest.

> (2) When a peace officer has stopped a person for questioning pursuant to this section and reasonably suspects that his personal safety requires it, he may conduct a pat-down search of that person for weapons.

**3.** In Colorado, an investigatory stop is also known as a *"Stone* stop." *Greer,* 860 P.2d at 530 n. 1.

U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the juvenile court here determined that the anonymous tip lacked reliability and the evidence must be suppressed. It determined that, because the tip merely contained easily obtained facts existing at the time the tip was given, rather than inside information predicting future actions of the defendant, it lacked reliability. The juvenile court's findings of fact included the following:

> The police received a phone call from a source unknown. The caller stated that there were three males in the area and one was wearing a poncho and carrying a possible BB rifle. The officers responded to the area and noted three juveniles 12–13 years old walking in Harvey Park. One of the juveniles was wearing a brown poncho. The police officers drove their marked police car onto the lawn and exited the car. At that point, without further inquiry, the officers ordered the juveniles to stop. [D.F.] stopped and put his hands in the air. The other two juveniles continued walking. [D.F] put his hands up and turned around revealing a shotgun in his waistband.
>
> . . . .
>
> In this situation, the officers received an anonymous tip that there were three juveniles and one was wearing a poncho were [sic] in the vicinity of Harvey Park. At the time of the stop, the police corroborated this tip with the observation that three juveniles were walking in a park and one was wearing a poncho.

■ The juvenile court ruled that observations by the two police officers of the three juveniles walking through the park, one wearing a poncho, did not "create a rational inference of criminal activity" and did not "provide the amount of information necessary to establish the requisite quantum of suspicion to justify a stop."[4] However, we conclude that the totality of circumstances in

this case demonstrates that the reliability of the anonymous tip was adequately corroborated by on-the-scene observations of the police officers, entailing an articulable and specific basis in fact to suspect that one of the youths could be carrying a concealed weapon. Accordingly, we hold that the investigatory stop was justified.

### B.

In the case before us, the juvenile court did not address in its findings of fact the evidence that D.F. was walking stiff-legged, a fact which along with the other facts found to exist by the trial court corroborated the reliability of the anonymous tip concerning a concealed weapon and justified the investigatory stop under the totality of the circumstances. In determining whether to remand the case for additional fact finding regarding this omitted fact, we are guided by a review of our disposition of prior suppression order cases.

Our appellate function involves the interrelationship between the evidentiary facts of record, the findings of the trial court, and the applicable legal standards in review of the lower court's conclusion of law. In *People v. Quezada*, 731 P.2d 730 (Colo.1987), we iterated the roles of the lower court and the reviewing court in suppression order cases:

> In reaching a decision on a motion to suppress a custodial statement, a court must engage both in *factfinding*—a specific inquiry into the historical phenomena of the case—and *law application* which involves the application of the controlling legal standard to the facts established by the evidence.
>
> A court's *findings of historical fact* are entitled to deference by a reviewing court and will not be overturned if supported by competent evidence in the record. An *ultimate conclusion of constitutional law*

---

4. The juvenile court entered the following conclusion of law:

> The tip, therefore, lacks reliability. The police corroborated this anonymous tip with the fact that three juveniles were walking through the park and one was wearing a poncho. This activity does not provide the amount of information necessary to establish the requisite quantum of suspicion to justify a stop.

> The officers did not have a specific and articulable basis in fact for suspecting that a crime has taken place, is in progress, or is about to occur. Therefore, the stop was not supported by reasonable suspicion and was in violation of [D.F.'s] Fourth Amendment rights. Thus, all evidence obtained from this stop must be suppressed. Motion to Suppress is granted.

that is inconsistent with, or unsupported by evidentiary findings, however, is subject to correction by a reviewing court, as is a court's application of an erroneous legal standard to the facts of the case.

*Id.* at 732–33 (citations omitted) (emphasis added).

■ Accordingly, as part of our review we ascertain "whether the trial court's findings of fact and conclusions of law are adequate for purposes of appellate review." *People v. McIntyre,* 789 P.2d 1108, 1109 (Colo.1990). We examine whether the court's "findings of historical fact are adequately supported by competent evidence and whether the court applied the correct legal standard to these findings." *People v. LaFrankie,* 858 P.2d 702, 706 (Colo.1993). We read the record and determine whether the evidence before the lower court "adequately supported the district court's ultimate legal conclusion." *People v. Jordan,* 891 P.2d 1010, 1015 (Colo. 1995).

■ We give deference to the factual findings of the trial court which are supported by competent evidence in the record. *See People v. O'Hearn,* 931 P.2d 1168, 1173 (1997); *see also Jordan,* 891 P.2d at 1015 (deferring to the district court's findings if they are adequately supported by evidence in the record). However, when the findings "are so clearly erroneous as not to find support in the record," *M.D.C./Wood, Inc. v. Mortimer,* 866 P.2d 1380, 1384 (Colo.1994), we set them aside, *see People v. Schrader,* 898 P.2d 33 (Colo.1995). When the trial court's conclusion of law "is inconsistent with or unsupported by" the evidentiary record, we have reversed the suppression order. *People v. Quezada,* 731 P.2d at 732. An erroneous conclusion of law "is subject to correction by a reviewing court." *Id.* at 733.

When appellate review is hindered by the absence of factual findings as to key contested issues, or when unresolved evidentiary conflicts exist with regard to material facts, we have remanded for further fact finding by the trial court. *See People v. Turtura,* 921 P.2d 40, 44 (Colo.1996); *People v. Sutherland,* 886 P.2d 681, 688 (Colo.1994).

■ We, like the trial court, review the totality of the circumstances in reaching the ultimate legal conclusion in suppression order cases. In *People v. Dracon,* for example, the trial court suppressed statements by the defendant as involuntary. 884 P.2d 712, 714 (Colo.1994). The trial court did not address in its findings and order the evidence which bore on whether the defendant's statements were induced by coercive police conduct. We noted that for a statement to be involuntary, coercive police activity had to play a significant role in inducing the statement. *Id.* at 718. The trial court did not find that the officer's conduct "was coercive or, if coercive, played a significant role in inducing the [defendant's] statements" nor did it find that the defendant's "will was overborne by improper state conduct." *Id.* at 719. In reviewing the evidence of record bearing on the ultimate legal conclusion to be drawn therefrom, including a videotape of the interrogation whereby we viewed the officer's demeanor and conduct, we concluded that coercion did not play a significant role in inducing the defendant's statements. *Id.* Because this was the only conclusion supported by the record, we concluded that, under the totality of the circumstances, the defendant's statements were voluntary and we held that the trial court's "determination that [the defendant's] statements were involuntary must be reversed." *Id.; see also People v. Johnson,* 865 P.2d 836, 841 (Colo.1994) (where the record below reveals no conflicting evidence regarding the details of the encounter, remand is unnecessary where the appellate court could apply the correct legal standard).

■ Here, the juvenile court made factual findings enabling review but did not include a key uncontradicted fact that one of the juveniles was walking stiff-legged. Observed by an officer on the scene, this fact, together with the facts the court found to exist, corroborated the reliability of the tip which alleged that a young male was carrying a concealed weapon. Though the juvenile court did not include this fact in its findings of fact, it did not find that the police officer's testimony should be disbelieved. When placed alongside the facts the court found to exist, this on-the-scene observation by the police officer, taking the tip into ac-

count, demonstrated an articulable basis in fact to reasonably suspect that one or more of the juveniles could be armed with a concealed weapon. We reject adopting an inference that the trial court's non-inclusion in its findings of an uncontradicted pivotal fact means that the trial court found the fact to be not credible. When trial courts find that testimony is not credible, such determinations appear in the trial court's findings and order and, thus, will be upheld on appeal. *See O'Hearn,* 931 P.2d at 1176; *M.D.C./ Wood, Inc.,* 866 P.2d at 1383.

■■■■ We do not view our disposition here as improper appellate fact finding. "When, as in this case, the controlling facts are undisputed, the legal effect of those facts constitutes a question of law." *Lakeview Assocs., Ltd. v. Maes,* 907 P.2d 580, 583–84 (Colo.1995). We are not bound by conclusions of law reached by lower courts, *id.* at 584, and, in the interests of justice in the context of an interlocutory appeal,[5] we need not remand with directions that the court include in its findings an operative uncontradicted historical fact which in context clearly and ineluctably leads to a legal conclusion opposite to that reached by the trial court.

The juvenile court's conclusion of law here that reasonable suspicion did not exist under the totality of the circumstances, is not supported by the record; to the contrary, the officers properly acted in making the investigatory stop and disarming the juveniles. *See People v. Schrader,* 898 P.2d at 36–37 (reversing a suppression order because the court did "not agree with the trial court's analysis and reasons for entering the suppression order"); *People v. Weston,* 869 P.2d 1293, 1299 (Colo.1994) (although district court did not discuss a significant issue in its suppression ruling, we determined based on our review of the record that the constitutionally permissible limits of a protective search were not exceeded).

In *People v. George,* 914 P.2d 367, 370 (Colo.1996), an anonymous tipster reported a possible altercation between the individuals in two vehicles, one of which was a van. We upheld the suppression order because the only fact corroborating the anonymous tip was entry of a van into the parking lot. In *People v. Garcia,* 789 P.2d at 193, we upheld the suppression order because the observations of the officer at the scene were "not sufficient in character or extent to suggest reliably that the informant had particularized knowledge of the defendant's activities."

In contrast, the observations made by the officer here were extensive enough that, together with the tip, they provided a specific and articulable basis to suspect that criminal activity was taking place. The evidentiary record demonstrates that the tip was specific and adequately corroborated, contrary to the juvenile court's conclusion. First, the officers had a fairly detailed description of the individuals they were seeking. They were advised that three young males had been seen walking together in a southbound direction. The tipster said one of those males was wearing a poncho and the juveniles had in their possession a concealed rifle. When the officers traveled along the same route that the males were said to be taking, they came to a park adjacent to a school. There they saw three male juveniles, one wearing a brown poncho, walking south in the park toward the playground area. One was walking stiff-legged as if something could be obstructing his movement. It was 1:30 in the afternoon on a Monday and the juveniles were walking in the direction of the school.

Officer Murawski made his observation that D.F. was walking stiff-legged before he ordered the juveniles to stop and put their hands up. When they did so, the officers saw the shotgun sticking out of the pants D.F. was wearing.

■■■■ Because an investigatory stop is less intrusive than an arrest, the standard for

---

5. The prosecution must certify under C.A.R. 4.1(a) that an interlocutory appeal is not taken for purposes of delay and that evidence suppressed is a substantial part of the proof of the charge pending against the defendant. *See People v. MacCallum,* 925 P.2d 758, 765 (Colo.1996). In exercising our appellate function in the context of an interlocutory appeal, we are conscious that the liberty interests of defendant and the public interest in the prosecution of criminal offenses are to be addressed in a manner which does not unnecessarily delay the ultimate disposition of the case.

reasonable suspicion is less than that for probable cause. *See Sutherland*, 886 P.2d at 686. "An investigatory stop is less intrusive than an arrest, and, accordingly, a police officer may conduct an investigatory stop and a limited search of a person for weapons with less than probable cause for an arrest." *Id.* Articulating precisely what reasonable suspicion means is not possible. As such, the applicable standards are "not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983); *see also Ornelas v. United States*, — U.S. —, —, 116 S.Ct. 1657, 1661, 134 L.Ed.2d 911 (1996). Contrary to defense counsel's argument, the on-the-scene observations of the police officer which corroborate the reliability of the tip do not require "viewing conduct that is criminal" but, rather, involve articulable facts which, taken together with rational inferences from the facts, reasonably warrant the intrusion. Contrary to the inference drawn by the juvenile court here, conduct which is compatible with innocent activity may also be compatible with justifying the limited investigatory intrusion. *See People v. Rahming*, 795 P.2d 1338, 1341 (Colo.1990) ("Factors which are not by themselves proof of illegal conduct may give a police officer reasonable suspicion, and 'there could, of course, be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity is afoot.'"). Whether the person is actually carrying a concealed weapon typically cannot be verified in the absence of an investigatory stop. Nevertheless, the discovery of the weapon does not justify the stop. Rather, the requisite basis for the stop must preexist.

▪ The reliability of an informant's tip is not the only determining factor when analyzing the reasonableness of an investigatory stop when a weapons complaint is involved. The content of the tip is important in ascertaining whether reasonable suspicion has been established. Information less reliable than that required to show probable cause may be taken into account. *See Alabama v. White*, 496 U.S. at 330, 110 S.Ct. at 2416. The level of the tip's detail and potential danger revealed are to be considered. Other courts have justified investigatory police

stops in the concealed weapons context, reasoning that the alternatives in such cases involve significant risk. *See United States v. McClinnhan*, 660 F.2d 500, 502–03 (D.C.Cir. 1981) (recognizing that officers have an "unappealing choice," whereby they could either stop the defendant on the basis of the tip that he was carrying a sawed-off shotgun in a black briefcase or could follow him through the streets of Washington hoping that he would commit a crime or brandish the weapon out of doors before the shotgun was put to its intended use); *State v. Kuahuia*, 62 Haw. 464, 616 P.2d 1374, 1375 (1980) (describing the police as "duty-bound" to make a temporary investigative stop of a person anonymously identified as carrying a rifle); *People v. Smithers*, 83 Ill.2d 430, 47 Ill.Dec. 322, 327, 415 N.E.2d 327, 332 (1980) (evaluating officers' actions in light of their failure to act—had they not conducted the stop and frisk for weapons, someone could have been killed or seriously injured).

A complaint regarding a person with a concealed weapon in a public place is cause for investigation. In *Terry*, the Supreme Court stated that

> [w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

392 U.S. at 24, 88 S.Ct. at 1881.

### III.

We conclude here, as we did in *People v. Hutton*, that "the trial court failed to evaluate the totality of the circumstances and, therefore, did not apply the correct standard." 831 P.2d 486, 489 (Colo.1992). The information known to the officers at the time both allowed and prudently required them to make the stop and ascertain whether one or more of the juveniles was armed. The stop, search, and seizure of the evidence was reasonable and justified under the circum-

stances. *See People v. Garcia,* 789 P.2d at 192.

Accordingly, we reverse the juvenile court's suppression ruling and remand the case for further proceedings consistent with this opinion.

SCOTT, J., specially concurs.

Justice SCOTT specially concurring:

While I agree with the majority that the trial court's order suppressing the prosecution's evidence should be reversed, I write separately because, in my view, as an appellate court we are not competent to determine the demeanor or credibility of a witness who has testified before the trial court and therefore cannot decide from a reading of the transcript in chambers which matters testified to should be accepted as fact. The majority crafts a rule whereby the absence of factual findings can be cured by an appellate court's review of a witness' testimony in the record.[1] Although such a rule may provide the correct result in the case before us, I cannot join in this departure from the traditional roles of our trial and appellate courts regarding an historical fact leading to a conclusion of law. Thus, although I too would vacate the trial court's order suppressing evidence, instead of engaging in fact finding, as does the majority, I would return the matter to the trial court for it to make further findings.

## I.

On February 5, 1996, two Denver police officers received a call from the police dispatcher that three male juveniles were walking southbound in the area of 1800 South Stuart Street and that one of them was wearing a poncho and possibly carrying a BB air rifle. Based on that information, the officers proceeded to the general area described and observed three juveniles, approximately 12–13 years old, walking southbound through Harvey Park. One of the youths was wearing a brown poncho. The officers pulled onto the grass, stopped the youths, and ordered them to put their hands in the air. At that time, the officers observed the butt of a gun protruding from the waistband of D.F.'s pants and he was arrested.

At the suppression hearing, Officer Paul Murawski testified on direct examination that the anonymous tip had contained the approximate ages of the juveniles and the color of the poncho. On cross-examination, however, the officer revealed that he had not indicated in either his statement or his offense report that the anonymous tip contained this specific information. The officer also testified on direct examination that, when he arrived at the park, he observed D.F. walking stiff-legged, "such as to indicate that something was preventing him from bending his leg." Again, cross-examination revealed that the officer's observation of D.F. walking stiff-legged was not contained in either of the officer's two written statements, one of which was a police report completed contemporaneous with the arrest, and was mentioned for the first time at the suppression hearing.

After hearing the officer's testimony, the trial court entered its findings of fact and, citing *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), determined that the activity observed by the officers did not provide the amount of information necessary to establish the requisite quantum of suspicion to justify a stop. Importantly, the trial court did not indicate in its findings whether it found the officer's testimony to be credible or incredible, in whole or in part. Nonetheless, the court concluded that "the officers did not have a specific and articulable basis in fact for suspecting that a crime [had] taken place, [was] in progress, or [was] about to occur. Therefore, the stop was not supported by reasonable suspicion and was in violation of [D.F.]'s Fourth Amendment rights." Accordingly, the trial court suppressed the evidence and this interlocutory appeal followed.

---

1. I address here the trial court's omission of a critical, or legally operative, fact. However, I also note that there may be uncontested facts in the record that we can accept without guidance by the trial court merely because they are not legally operative, i.e., capable of altering the ultimate conclusion of law.

## II.

It is axiomatic under both the United States Constitution[2] and the Colorado Constitution[3] that before making an investigatory stop, an officer must reasonably suspect that an individual is engaged in, has engaged in, or is about to engage in criminal conduct. *See Terry v. Ohio,* 392 U.S. 1, 30–31, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889 (1968); *Stone v. People,* 174 Colo. 504, 509, 485 P.2d 495, 497 (1971). The constitutional permissibility of each stop must be determined on its own facts based upon the totality of the circumstances. *See People v. Garcia,* 789 P.2d 190, 193 (Colo.1990).

Here, we are dealing with a stop based upon information supplied by an anonymous tip. However, an anonymous tip, by itself, lacks sufficient indicia of reliability to establish reasonable suspicion. *See People v. Contreras,* 780 P.2d 552, 555 (Colo.1989). Therefore, when an investigatory stop is conducted pursuant to an anonymous tip, we have held that the tip must be corroborated by observations that establish a specific and articulable basis in fact to suspect that the individual is engaging in criminal conduct. *Id.*

The standards for evaluating whether a tip by an anonymous informant, as supplemented by some level of corroboration, is sufficient to create reasonable suspicion were set forth in *People v. Garcia.* As pertinent here, we noted in *Garcia* that corroboration of information that is "commonplace or unremarkable" or of "a pattern of conduct that is intrinsically unsuspicious" is not sufficient in character or extent to suggest reliably that the informant had particularized knowledge of the defendant's activities. *Garcia,* 789 P.2d at 193. Thus, the reasonable suspicion

2. The Fourth Amendment to the United States Constitution provides in pertinent part: "The right of the people to be secure in their persons ... against unreasonable searches and seizures shall not be violated."

3. Article II, § 7, of the Colorado Constitution also provides that "[t]he people shall be secure in their persons ... from unreasonable searches and seizures."

4. In its written findings, the trial court characterized the observations of the officers as follows:

which justifies an investigatory stop cannot be premised on an anonymous tip that is corroborated only by unremarkable, everyday activity. *Id; see also White,* 496 U.S. at 332, 110 S.Ct. at 2417.

## III.

In the instant case, the only testimony presented at the suppression hearing was from one of the police officers who made the initial stop and arrest of D.F. After hearing the direct and cross-examination testimony, the trial court entered its findings of fact and concluded that the activity observed by the police officers did not establish "the requisite quantum of suspicion to justify a stop."[4] The court based its conclusion on the fact that the tip from the unknown informant "did not contain inside information or future actions not easily predicted, but only easily obtained facts and conditions existing at the time of the tip." *See White,* 496 U.S. at 332, 110 S.Ct. at 2417; *Garcia,* 789 P.2d at 193. Importantly, the trial court did not include in its findings the fact that the police officer had observed D.F. walking with a stiff leg.

Based on its review of the record, however, the majority here engages in additional fact finding to support its opposite conclusion that "the totality of the circumstances in this case demonstrates that the reliability of the anonymous tip was adequately corroborated by on-the-scene observations of the police officers, entailing an articulable and specific basis in fact to suspect that one of the youths could be carrying a concealed weapon." Maj. op. at 13. In so holding, the majority finds, as fact, a corroborating circumstance not mentioned by the trial court, i.e., the officer's observation of D.F. walking stiff-legged. While there is evidence in the record upon

The officers responded to the area and noted three juveniles 12–13 years old walking in Harvey Park. One of the juveniles was wearing a brown poncho. The police officers drove their marked police car onto the law and exited the car. At that point, without further inquiry, the officers ordered the juveniles to stop. [D.F.] stopped and put his hands in the air. The other two juveniles continued walking. [D.F.] put his hands up and turned around revealing a shotgun in his waistband.

which the majority relies, it is patently clear that no such finding of fact was made by the trial court. *See id.* at 14–15. Nevertheless, the majority states that "[the fact of the stiff leg] corroborated the reliability of the tip which alleged that a young male was carrying a concealed weapon." *Id.* In my view, it is inappropriate for the majority to consider such testimony as fact.

I agree with the majority that where the findings of the trial court are supported by the record, those findings must be accepted on review unless they are clearly erroneous. *See* maj. op. at 14; *M.D.C./Wood, Inc. v. Mortimer,* 866 P.2d 1380, 1384 (Colo.1994). I also note that we are to accept the findings of the trial court when supported by the record for the very reason that a trial court is especially well positioned and better able than appellate courts to determine the credibility of witnesses. *See University of Colorado v. Derdeyn,* 863 P.2d 929, 938 (Colo. 1993). Nonetheless, these cases do not support the proposition for which they are offered and the majority fails to provide other authority for such a result.

We have, for example, consistently disapproved of the substitution of new factual findings by reviewing courts for those made by the trial court. *See Page v. Clark,* 197 Colo. 306, 313, 592 P.2d 792, 796 (1979). Where the record clearly supports the findings of the trial court, it is inappropriate to allow a reading of a transcript, accepting all statements of a witness as true, to serve as a basis for rejecting credibility determinations implicit in the trial court's factual findings. *See People v. Dover,* 790 P.2d 834, 835 (Colo. 1990). It does not necessarily follow that because a finder of fact accepts a portion of relevant testimony to be credible, it also determines that the entire testimony is similarly competent. In this case, for example, it is reasonable to conclude that the trial court found part of the officer's testimony incredible.

While I agree that the observation of D.F. walking with a stiff leg combined with the informant's tip that the juveniles might be carrying a concealed weapon is critical to the determination of whether the requisite suspicion existed to make the stop, I, unlike the majority, cannot rely on that factor because the trial court did not include it in its findings or indicate in any way how it viewed that portion of the officer's testimony. As noted above, the trial court stated only that the officers drove up, noted three juveniles walking through the park, and ordered them to stop. *See supra* note 4. Thus, based upon the trial court's limited findings and the principles articulated in *Garcia,* I believe that the matter must be returned to the trial court for additional findings because, without further clarification regarding the factor of the stiff leg, the only facts accepted in the record as corroborated by the officer were, indeed, "intrinsically unsuspicious." *Garcia,* 789 P.2d at 193.

The majority, however, determines that remand for further findings is unnecessary because the testimony of the officer regarding the stiff leg was uncontradicted. *See* maj. op. at 14–15. However, whether or not this testimony is uncontradicted has no bearing on the issue before us. Simply because the officer's testimony is uncontested does not mean that the trial court necessarily found it credible. *See, e.g., Pioneer Constr. Co. v. Richardson,* 176 Colo. 254, 259, 490 P.2d 71, 74 (1971) (trial court, as trier of fact, is not bound to accept even uncontradicted testimony as fact); *Robbins v. People,* 142 Colo. 254, 263, 350 P.2d 818, 823 (1960) (a court need not accept a statement as true because there is no direct testimony contradicting it). The testimony regarding the stiff leg is a critical factor in our determination here and we have no basis to determine what weight, if any, the trial court gave to that testimony.

Indeed, based on the record before us, it is entirely possible that the trial court found the officer's testimony regarding the stiff leg to be *incredible* and therefore purposefully chose not to include that fact in its findings. On cross-examination, the juvenile's attorney elicited testimony not entirely consistent with the officer's testimony on direct examination that he observed the juvenile walk stiff-

legged.[5] *See Robbins*, 142 Colo. at 263, 350 P.2d at 823 (reasonable inferences from circumstances tending to discredit or weaken uncontradicted testimony should be considered). If such is the case, because an appellate court may not speculate on witness credibility or resolve evidentiary conflicts, we as the reviewing court are unable to consider the trial court's credibility determination. *See People v. Jordan*, 891 P.2d 1010, 1019 (Colo.1995) (Kirshbaum, J., dissenting); *People v. Medina*, 185 Colo. 183, 184, 522 P.2d 1233, 1234 (1974).[6] I therefore disagree with the majority's characterization of the officer's testimony regarding the stiff leg as "uncontradicted historical fact which in context clearly and ineluctably leads to a legal conclusion opposite to that reached by the trial court." Maj. op. at 15.

Furthermore, the majority's reliance on our decisions in *People v. Dracon*, 884 P.2d 712 (Colo.1994), and *People v. Johnson*, 865 P.2d 836 (Colo.1994), is misplaced. In both of those cases, the trial court made sufficient findings of fact to enable us to engage in meaningful appellate review. For example, in *Dracon*, we held only that "the district court's findings of fact are supported by competent evidence in the record and ... the district court applied the correct legal standard in resolving the issue of custodial interrogations." 884 P.2d at 718. Moreover, unlike *Dracon*, where our review of a videotape of an interrogation allowed us to "view[ ] ... the officer's demeanor and conduct," maj. op. at 14, here not only are we relying on a reading of testimony in the record, but, in doing so, we are not able to review Officer Murawski's "demeanor and conduct" on the witness stand. Similarly, in *Johnson*, we

stated that the trial court "made sufficient findings of fact to allow [us] to engage in meaningful appellate review" and also that "[t]he court's oral order suppressing the seized cocaine provides a thorough recitation of the facts regarding the officers' contact with Johnson." 865 P.2d at 840. I can find no support in these cases for the majority's new rule of fact finding here.

Here, it is clear that we are dealing with incomplete, rather than erroneous findings.[7] The majority is therefore forced to supplement the trial court's findings of fact in order to support its opposite conclusion. By doing so, however, the majority fails to recognize the proper place of the trial court in making credibility determinations. *See People v. Franklin*, 645 P.2d 1, 4 (Colo.1982) (the determination of the credibility of witnesses is a matter solely within the province of the finder of fact). The trial court heard the full testimony of the officer and did not choose to include the information regarding the stiff leg as part of its findings. Thus, the trial court either did not find the testimony of the officer credible, in which case we should defer to that determination, *see Franklin*, 645 P.2d at 4, or it considered that factor in its analysis under *Alabama v. White*, in which case we could determine that the trial court erred as a matter of law.

## IV.

### A.

Furthermore, I am compelled to note that I disagree with the majority's assertion that, when analyzing the reasonableness of an in-

---

5. The record reveals that, on cross-examination, the officer admitted that his observation regarding the stiff leg had not been included in either his written statement or in the police report and was, in fact, revealed for the first time during his testimony at the suppression hearing.

6. I am not, however, suggesting that the non-inclusion of a pivotal fact necessarily implies that the trial court found it incredible. *See* maj. op. at 14. Rather, I am simply noting that because the determination of whether this stop was constitutionally permissible turns on this testimony, we must be certain of how the trial court received it. Likewise, however, I do not believe it is correct for the majority to imply that by *not*

including the fact of the stiff leg in its findings, the trial court necessarily found the officer's testimony to be credible. *See id.*

7. The majority sets forth precedent regarding erroneous or unsupported findings. However, we are not faced here with a situation where the trial court's findings are "clearly erroneous" or "inconsistent with or unsupported by" the evidentiary record. Maj. op. at 14 (citing *M.D.C./ Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1384 (Colo.1994); *People v. Quezada*, 731 P.2d 730, 732 (Colo.1987)). Thus, contrary to the suggestion by the majority, we are not dealing here with an erroneous conclusion of law that is subject to correction by a reviewing court.

vestigatory stop, "the level of the ... potential danger revealed [is] to be considered." Maj. op. at 16. In so holding, the majority misconstrues the term "content" to include the level of potential danger and, by so doing, effectively lowers the constitutional standard for determining the reasonableness of an investigatory stop based upon the nature of the crime alleged by the anonymous tipster.

In my view, there is no support for this unique approach to Fourth Amendment analysis in our jurisprudence. In *Alabama v. White,* the Supreme Court noted that "[r]easonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability." *White,* 496 U.S. at 330, 110 S.Ct. at 2416. However, the Court defines its use of the term "content" by saying that "[b]oth factors—*quantity and quality*—are [factors] ... that must be taken into account when evaluating whether there is reasonable suspicion." *Id.* (emphasis added). Thus, by its reference to the "content" of the tip, the Court was not referring in any respect to the nature of the crime reported, as the majority implies, but was instead concerned solely with the quantity, or the specificity of the information provided.

Likewise, I do not find persuasive the majority's citation to several out-of-state cases which it reads to imply that, regardless of the reliability of the tip or the existence of reasonable suspicion, a police officer's investigatory stop may be "justified [because] the alternatives in such cases involve significant risk." Maj. op. at 16. The cases cited by the majority are distinguishable. For example, in *United States v. McClinnhan,* 660 F.2d 500, 502–03 (D.C.Cir.1981), the court noted that the tip was corroborated in "every significant detail," that the officer's suspicion had an "objective foundation," and that the officers had a "reasonable suspicion that [the defendant] was armed." Similarly, in *People v. Smithers,* 83 Ill.2d 430, 47 Ill.Dec. 322, 326, 415 N.E.2d 327, 331 (1980), the court found sufficient articulable facts to create a reasonable belief that an offense had been or was about to be committed and that people were in danger of being harmed. And, in *State v. Kuahuia,* 62 Haw. 464, 616 P.2d 1374, 1375

(1980), the content of the tip was substantial in that it contained a great deal of detail— e.g., time, place, personal observation of the weapon in the vehicle, and the license plate number of the vehicle. Moreover, to the extent that those case contain dictum which suggests that the possible presence of a firearm alone mandates an investigative stop, I would hope that this court will decline to follow them.

Although I recognize and join in the serious concern regarding public safety, I cannot agree that, in response, we must apply our Fourth Amendment analysis on an ad hoc basis, each time assessing the potential harm of an officer's inaction, thereby justifying an otherwise plainly unconstitutional stop. Indeed, the majority reads the Fourth Amendment to say that "the right of the people to be secure in their persons ... against unreasonable searches and seizures shall not be violated, *except in circumstances involving a gun.*" Such a result, I fear, will fall prey to a slippery slope of exceptions, effectively eviscerating our body of law surrounding the Fourth Amendment and investigatory stops. For that reason, I disagree with that portion of the majority's opinion contained in part II at pages 15–16.

### B.

Lastly, I note this case is not finally resolved by what we do today, and, in any event, must be returned to the trial court for further proceedings. While the majority's fact finding rule is expedient, it also works to avoid one of the two possible results that could occur pursuant to my analysis: One, if the trial court concludes, on remand, that the officer's testimony as to the stiff-legged walk is credible, it then must vacate its earlier order, the evidence previously suppressed will be admissible, and the matter would proceed to trial. Two, if the trial court concludes, on remand, that the officer's testimony is incredible, its order may stand and the evidence remain suppressed. It is only the latter which the majority avoids. Having confidence that the trial court can complete its work without significant effort or the necessity of conducting a hearing, I am com-

fortable with either outcome. Because we are focused on a legally operative fact, "key" to our ultimate decision, and because it relates to a fundamental right, I prefer having the trial court make its findings explicit.

The Fourth Amendment provides that every citizen shall "be secure ... against unreasonable searches and seizures." To the extent the state violates this constitutional promise, the independent, neutral magistrate prohibiting the use of illegally obtained evidence is the means by which we vindicate these fundamental rights. I have always come to understand that these rights, as fundamental as any in our original documents, are to remain inviolate—certainly not to be cast aside for judicial economy or expediency. It is this conviction that places me at a loss as to how a remand for fact finding dependent upon witness credibility is of danger to "the interests of justice in the context of an interlocutory appeal." Maj. op. at 14–15.

In the end, lest we forget, we not only vindicate the rights of the accused before us but those of every citizen who may be illegally stopped by the police but who, upon an intrusion that fails to produce a concealed weapon or other incriminating evidence, is never charged or tried. When called upon to vindicate fundamental rights, the stakes are high. Thus, in my view, when we alter process for expediency's sake, we reduce unnecessarily the security promised by government through the Fourth Amendment.

## V.

In sum, it is my view that from the record before us, we cannot tell whether the trial court considered the factor of the stiff leg, and if so, what effect that consideration had on its findings of fact and conclusions of law regarding the investigatory stop. In the absence of sufficient findings of fact by the trial court concerning this legally significant circumstance under which the investigatory stop of D.F. was made, our appellate function is hindered. When confronted by insufficient findings by the trial court, it is inappropriate for an appellate court to supplement the record with its own resolution of a key, operative fact which necessarily rests on the cred-

ibility of a witness and controls a conclusion of law.

Accordingly, although I agree with the majority that the trial court's ruling should be reversed, in my view, we are not empowered by key uncontradicted testimony or convenience to make factual findings and therefore I would remand to the trial court for further findings.