Richard D. ROBBINS, Petitioner,

v.

The PEOPLE of the State of Colorado, Respondent.

No. 03SC563.

Supreme Court of Colorado, En Banc.

Feb. 22, 2005.

James O. Simpson, Evergreen, for Petitioner.

John Suthers, Attorney General, Laurie A. Booras, First Assistant Attorney General, Denver, for Respondent.

KOURLIS, Justice.

The defendant, Richard D. Robbins, filed a motion under Crim. P. 35(c) to vacate a judgment of conviction entered against him in 1958 for felony first degree murder. The trial court dismissed the motion after a hearing on the grounds that it was barred by laches. The court of appeals affirmed in *People v. Robbins,* 87 P.3d 120, (Colo.App. 2003) (*"Robbins III"*), and we accepted certiorari to consider the question of whether section 16-5-402, C.R.S. (2004), which sets forth no time limit on the filing of postconviction motions as to first degree felony convictions, precludes the court from considering whether the motion should nonetheless be barred by laches. We now hold that section 16-5-402 does not explicitly abrogate the common law defense of laches, and that such doctrine is consistent with the general legislative intent of the statute. Therefore, it was not error for the trial court to consider and apply the doctrine in this case. Accordingly, we affirm the decision of the court of appeals.

## I. Facts

At age nineteen, Robbins, together with an accomplice, Gregory Warner, attempted to rob a pedestrian. On the evening of May 18, 1958, Warner and Robbins accosted the victim and informed him it was a "stickup." The defendant stood behind the victim with a pistol while Warner stood in front of the victim with a knife. After Warner had "poked" the victim a few times with his knife, Robbins struck the victim in the head with the butt of the pistol. The gun discharged and the bullet struck Warner, killing him.

Criminal charges, including one count of first degree murder, were filed against Robbins in Denver District Court. Robbins entered a plea of not guilty.

Trial began on October 21, 1958. On October 23, Robbins' attorney, Anthony Zarlengo, requested a preliminary examination of Robbins' physical and mental health.[1] The court appointed a psychiatrist and permitted an extensive examination of Robbins at the Colorado State Hospital. The report by the appointed expert indicated Robbins was not subject to epilepsy and was not insane. The court thus denied defendant's motion to enter a plea of not guilty by reason of insanity and ordered the trial to continue. Robbins did not testify in his own defense. At the conclusion of the trial, the jury returned a verdict of guilty to the first degree murder charge. Robbins was sentenced to life imprisonment.

In 1971, Governor John Arthur Love commuted Robbins' life sentence to 29 years to life. Robbins was paroled three times between 1972 and 1979 but was unable to adjust to civilian life. In 1994 he arrived at the Limon Correctional Facility where a fellow inmate allegedly assisted him in formulating the postconviction challenge which the court now addresses.

## II. Procedural History

Robbins, represented by Mr. Zarlengo, first challenged his conviction in 1960 on the grounds that the trial court erred in refusing his request for a directed verdict on certain

**1.** Mr. Zarlengo indicated that he had received a phone call that morning from a nurse claiming that Robbins had a history of epilepsy. Mr. Zarlengo requested a preliminary examination of Robbins to determine "whether or not he is capable of forming any intent to rob" and "whether to stand on the present plea or whether to consider any other pleas."

issues, erred in denying his motion to enter a plea of not guilty by reason of insanity and committed prejudicial error with regard to jury instructions. *Robbins v. People,* 142 Colo. 254, 258, 350 P.2d 818, 820–21 (1960) (*"Robbins I "*). The appeal came straight to this court because it arose during a period of time when there was no intermediate court of appeals in Colorado. This court found no error in the trial and affirmed the conviction. *Id.* at 263, 350 P.2d at 823.

The case lay dormant until April 21, 1995 when Robbins brought a pro se motion pursuant to Crim. P. 35(c) alleging ineffective assistance of counsel. As grounds for his motion, Robbins alleged that Zarlengo had conducted an inadequate investigation into possible affirmative defenses and that Zarlengo denied Robbins the right to testify at trial. The trial court denied Robbins' motion without an evidentiary hearing, holding that Robbins failed to establish a present need for review of his 1958 conviction and that the time between his trial and motion for relief comprised an unconscionable delay resulting in prejudice to the People. Robbins appealed, and the court of appeals vacated the district court's decision. *People v. Robbins,* No. 95CA1566 slip op. at 2 (Colo.App. Oct. 24, 1996) (not selected for official publication) (*"Robbins II "*). The court of appeals opined that the while the equitable doctrine of laches could be asserted against the defendant, Robbins must be given the opportunity to explain the delay and rebut the claim of prejudice to the People. *Id.* at 4–5. Thus, the case was remanded to the trial court.

In February 2001, the district court held an evidentiary hearing on Robbins' Rule 35(c) Motion. Following the hearing, the district court found that notwithstanding the statute, Robbins' claim was barred by unconscionable delay that resulted in irreparable prejudice to the People. The court noted that an ineffective assistance of counsel claim was available to Robbins in the early 1960's and he had numerous opportunities to pursue postconviction relief prior to 1995. Finally, the court noted that Zarlengo's death eight months before the filing of Robbins' motion made his timing suspect. The trial court rejected Robbins' assertion that his delay was attributable to mental deficiencies. Robbins again appealed the denial of his motion.

This time, the court of appeals affirmed the trial court's order in *Robbins III,* 87 P.3d at 124. It is from this decision that Robbins now appeals. We granted certiorari to determine whether the equitable doctrine of laches can be applied, as a time bar, to avoid postconviction review of a class one felony conviction.

## III. Analysis

Crim. P. 35(c) affords every person convicted of a crime the right to seek postconviction review upon the grounds that the conviction was obtained in violation of the Constitution or laws of the United States or the constitution or laws of this state. *People v. Hubbard,* 184 Colo. 243, 247, 519 P.2d 945, 947 (1974). Since 1984, motions under Rule 35(c) have been constrained by section 16–5–402, which imposes a time limitation for commencing collateral attacks on judgments of conviction. *See People v. Wiedemer,* 852 P.2d 424, 428 (Colo.1993); *People v. Robinson,* 833 P.2d 832, 836 (Colo.App.1992). Today, we consider whether the absence of a limitation period for class one felonies in section 16–5–402 signifies the general assembly's intent to abrogate the doctrine of laches where a defendant seeks delayed postconviction relief from a class one felony.

### A. Statutory Limitations on Postconviction Relief

■ In construing a statute, it is our primary purpose to ascertain and give effect to the intent of the legislature. *Charnes v. Boom,* 766 P.2d 665, 667 (Colo.1988). To that end, we look first to the language of the statute itself. *People v. Dist. Court,* 713 P.2d 918 (Colo.1986). Words and phrases are given effect according to their plain and ordinary meaning. *Id.* This plain meaning rule informs our principle that a statute may not be construed to abrogate the common law unless such abrogation was clearly the intent of the general assembly. *Preston v. Dupont,* 35 P.3d 433, 440 (Colo.2001), *Robinson v. Kerr,* 144 Colo. 48, 52, 355 P.2d 117, 119–20 (1960). Absent such clear intent, statutes must be deemed subject to the common law.

*Bradley v. People*, 8 Colo. 599, 604, 9 P. 783, 786 (1886). Finally, statutes in derogation of the common law must be strictly construed in favor of the person against whom the provisions are intended to apply. *Preston*, 35 P.3d at 440.

As relevant in this case, the statute of limitations for collateral attack upon convictions provides:

> Except as otherwise provided in subsection (2) of this section, no person who has been convicted as an adult or who has been adjudicated as a juvenile under a criminal statute of this or any other state of the United States shall collaterally attack the validity of that conviction or adjudication unless such attack is commenced within the applicable time period, as provided in subsection (1), following the date of said conviction . . . :
>
> All class 1 felonies: No limit
> All other felonies: Three years

§ 16–5–402(1). This statute was adopted in 1981 to address the inherent difficulties of defending against stale claims. *See* ch. 190, sec. 3, § 16–5–402, 1981 Colo. Sess. Laws 926–27. The objective of the general assembly in enacting section 16–5–402 was to reduce the availability of postconviction review to the extent constitutionally permissible. *People v. Fagerholm*, 768 P.2d 689, 692 (Colo. 1989). The goals of section 16–5–402 are two-fold. First, the statute seeks to alleviate "the difficulties attending the litigation of stale claims." § 16–5–402(2). Second, section 16–5–402 gives finality to judgments of conviction so that other provisions directed at repeat offenders, former offenders and habitual offenders will not be undermined. *Wiedemer*, 852 P.2d at 429. Within the reach of these two principles we must decided whether the common law defense of laches survives the enactment of section 16–5–402.

Presumably because of the severity of sentences imposed for class one felonies, the legislature determined that attacks on judgment of convictions for such offenses should not be subject to absolute statutory limits. *Id.* at 428. However, the statute is silent as to whether laches may still bar such an attack. First, we consider the nature and application of the doctrine of laches.

## B. Equitable Doctrine of Laches

Laches is an equitable doctrine that may be asserted to deny relief to a party whose unconscionable delay in enforcing his rights has prejudiced the party against whom relief is sought. *People v. Bravo*, 692 P.2d 325, 326 (Colo.App.1984). We have held that where extensive delay has resulted in the death of witnesses, or where their memories have dimmed, equity should bar relief. *O'Byrne v. Scofield*, 120 Colo. 572, 578, 212 P.2d 867, 871 (1949). However, the application of laches cannot be predicated upon delay alone. *See People v. Salvador*, 189 Colo. 181, 183, 539 P.2d 1273, 1275 (1975). Rather, the record must show lack of diligence in the face of actual knowledge of the conditions giving rise to the claim. *See Board of County Comm'rs v. Echternacht*, 194 Colo. 311, 572 P.2d 143, 146 (1977); *Bravo*, 692 P.2d at 326–27. Finally, the party asserting laches as an affirmative defense has the burden of demonstrating prejudice. *Nolan v. Dist. Court*, 195 Colo. 6, 9, 575 P.2d 9, 10 (1978). If the court invokes the doctrine *sua sponte*, the party against whom laches is asserted must be given an opportunity to explain the delay and rebut the claim of prejudice. *See Hagerman v. Bates*, 24 Colo. 71, 80, 49 P. 139, 142 (1897).

Although courts have primarily applied laches in a civil context, it has also been used as a time bar against stale postconviction attacks in a number of jurisdictions. *See, e.g., Oliver v. United States*, 961 F.2d 1339, 1342–1343 (7th Cir.1992) (laches barred 17–year–old claim); *Paxton v. State*, 903 P.2d 325, 326 (Okla.Crim.App.1995) (laches applicable to postconviction attack after enactment of Okla. Stat. 22, § 1080 which provided no statutory limit); *State v. Atkins*, 303 S.C. 214, 399 S.E.2d 760, 762 n. 1 (1990) (motion for postconviction relief dismissed on grounds of laches); *State v. Evans*, 273 Wis.2d 192, 682 N.W.2d 784, 796 (2004) (claim of ineffective assistance of counsel is subject to defense of laches); *see also* Donald E. Wilkes, *State Postconviction Remedies and Relief* § 3.2, App. A (2001 ed.).

Prior to the enactment of section 16–5–402, this court applied laches as a time bar

against defendants who delayed in asserting their claims. *See, e.g., People v. Arnold,* 190 Colo. 193, 194, 544 P.2d 968, 969 (1976) (holding that "stale claims are not favored, and relief will not be granted to correct ancient procedural error," court denied Crim. P. 35 relief from robbery conviction); *Mahany v. People,* 31 Colo. 365, 367, 73 P. 26 (1903) (defendant who failed to correct insufficient verdict at the time it was rendered "cannot afterward take advantage of his own laches"). Even where the court did not explicitly mention the defense of laches, we have denied postconviction relief to defendants who failed to bring their claim in a timely manner. *See People v. Bucci,* 184 Colo. 367, 372, 520 P.2d 580, 582 (1974) (1972 challenge to 1950 forgery conviction dismissed on grounds defendant's delay disqualified him from relief).

 It is clear that before the enactment of section 16–5–402, Colorado courts had the power to apply laches as a bar to postconviction relief. In interpreting statutes, the court presumes the legislation was passed with deliberate and full knowledge of all existing law dealing with the same subject. *In re Questions Submitted by U.S. Dist. Court,* 179 Colo. 270, 275, 499 P.2d 1169, 1171 (1972). We therefore presume the general assembly was aware that laches worked as a time bar against criminal postconviction challenges to any conviction. Thus, we must consider whether the legislature abrogated that doctrine by imposing no time limit on challenges to first degree murder convictions.

## C. Application of Laches Within Statutory Limits

 Although the statute provides no limitation on the time in which a postconviction challenge to a class one felony may be brought, the mere existence of a statute of limitations does not preclude the application of laches. Rather, laches and statutory limits can be co-extensive. Where this is the case we have held that the statute will be followed, *O'Byrne,* 120 Colo. at 578, 212 P.2d at 871, but "within this limit the peculiar doctrine of courts of equity should prevail," *Great West Mining Co. v. Woodmas of Alston Mining Co.,* 14 Colo. 90, 98, 23 P. 908,

911 (1890). Hence, laches may be invoked against a stale claim where there is otherwise no time limitation to collateral attack—unless it has been clearly abrogated by statute. Because we find the statute's silence with respect to the doctrine of laches or other common law defenses ambiguous, we look to the legislative history of section 16–5–402 and our case law to determine whether the abrogation of laches is here within the intent of the general assembly. *See* § 2–4–203, C.R.S. (2004); *Schubert v. People,* 698 P.2d 788, 793–94 (Colo.1985).

Before the statute was enacted into law, both the Senate and the House Committee on Judiciary received testimony from various witnesses. Whether section 16–5–402 would preclude the application of laches was not discussed in either hearing. Rather, the bill was characterized as codifying a time limit for attacks on convictions such that if the defendant did not file within the time limit, he would be presumed to have waived his rights. Such a presumption was justified "because of laches and sleeping on your rights." *Concerning Amendments to the "Colorado Code of Criminal Procedure:" Hearing on S.B. 262 Before the Senate Committee on Judiciary,* 53rd Gen. Assembly (1981) (statement of Otto Moore, Assistant District Attorney, Denver County). Testifying before the House, Moore again stated that the purpose of the proposed legislation was to "provide a statute of limitations beyond which no collateral attack could be made on a judgment of conviction of a crime." *Concerning Amendments to the "Colorado Code of Criminal Procedure:" Hearing on S.B. 262 Before the House Committee on Judicary,* 53rd Gen. Assembly (1981) (statement of Otto Moore, Assistant District Attorney, Denver County). He did state that "there is no statute of limitations against a class one felony." *Id.* In response to Representative Scherling's concern that without a limit to class one felonies, the statute would not eliminate the problem of delay, Moore responded that while the legislature could not bar collateral attacks, the intent was to establish a time frame in which "a person should come in [sic] and realize the fact that he'd been unjustly convicted." *Id.* While this exchange does not conclusively

resolve the issue before this court, we do not discern a clear intent to abrogate laches as to class one felonies. To the contrary, the proponents of the bill appear to have been motivated primarily by a strong desire to curb stale collateral attacks.

## D. Case Law Considering Limitations on Collateral Attack

Our case law has also acknowledged the importance of curbing delayed postconviction motions. We have recognized section 16–5–402 as "one means" of precluding stale or repetitive attacks on criminal convictions. *Wiedemer,* 852 P.2d at 433. The majority of Colorado cases applying section 16–5–402 have done so without comment on the alternative doctrine of laches. *See Duran v. Price,* 868 P.2d 375, 378 (Colo.1994) (stating that "according to section 16–5–402 there is no limit on the time period in which to challenge any class one felony"), *People v. Shackelford,* 851 P.2d 218, 221 (Colo.App.1992) (holding that expiration of limitation period does not divest trial court of subject matter jurisdiction). At least two modern cases have considered laches as a time bar to postconviction relief.

In *Bravo,* the court of appeals applied laches as a bar to the defendant's challenge to his 1955 robbery conviction. 692 P.2d at 326.[2] In *Bravo,* the defendant filed a motion for a new trial in 1981. *Id.* The trial court denied his motion holding that his request was time barred under the doctrine of laches. *Id.* The court of appeals affirmed, concluding that since a motion for relief under Crim. P. 35 was governed by equitable principles, laches was applicable. *Id.* at 327.

Following *Bravo,* a trial court again considered laches as a possible bar to postconviction relief. *See Fagerholm,* 768 P.2d at 691 (assuming applicability of laches to criminal cases, trial court found no evidence of unconscionable delay; issue was not addressed on appeal).

Finally, we note that when the general assembly wishes to abrogate the common law in other areas of criminal law, it has done so explicitly. *See, e.g.,* § 18–1–104(3), C.R.S. (2004). We have found no such statement here with regard to equitable defenses such as laches. Moreover, our courts have relied on common law for amplification of the criminal code where necessary. *Id.; see also People v. Berry,* 703 P.2d 613, 614 (Colo.App. 1985) (court of appeals found no merit in People's argument that courts are precluded from reliance on common law in amplification of sections of the criminal code) *overruled on other grounds by Beckett v. People,* 800 P.2d 74 (Colo.1990).

Our legislature and courts have evinced a strong desire to curb stale postconviction claims in order to ensure finality of convictions in our criminal justice system, give force to repeat offender statutes, and alleviate the difficulties of litigating stale claims. The preservation of laches as a time bar against stale claims comports with that intent. We now hold there is no express implication that the equitable doctrine of laches was abrogated by the enactment of section 16–5–402. Crim. P. 35(c) is a postconviction remedy grounded in equitable principles, and under certain circumstances, laches may work to bar the defendant's claim for relief where section 16–5–402 otherwise would not.

## IV. Application

Robbins was convicted of first degree murder in 1958. His conviction was affirmed in 1960, and since that time his life sentence had been commuted by the Governor and he has been paroled three times. More than three decades after his conviction, and a mere eight months after his original defense counsel died, Robbins filed a Rule 35(c) Motion asserting ineffective assistance of counsel. The issue being raised in the subject motion was available to Robbins in the 1960's. Also, during his parole, Robbins had the opportunity to contact Mr. Zarlengo or other counsel and pursue postconviction

---

2. In 1983, *People v. Germany,* 674 P.2d 345 (Colo.1983) rendered section 16–5–402 unconstitutional because it precluded collateral attack without providing defendant opportunity to show failure to assert timely challenge was result of

justifiable excuse or excusable neglect. Although *Bravo* was decided after the effective date of legislation amending section 16–5–402, no reference was made to the statute.

matters. We agree that the timing of Robbins' motion is "suspect," and that there was no showing before the trial court that Robbins did not have knowledge of the claim many years prior to its filing. Furthermore, the People adequately demonstrated prejudice in that the only witness who could respond to Robbins' claims is now deceased.

## V. Conclusion

We now hold that while section 16–5–402 does not impose an absolute statutory limitation on the period in which a defendant may bring a collateral attack against a class one felony, time bars may arise out of the application of the doctrine of laches under certain circumstances. Trial courts have the flexibility to assess cases individually and to decide whether equitable considerations should preclude postconviction relief.

In this case, the record supports the trial court's finding that the defendant filed his Rule 35(c) Motion after unconscionable delay, which resulted in irreparable prejudice to the People. Because we have found no indication that section 16–5–402 was intended to abrogate the equitable doctrine of laches, we affirm the trial court's denial of Robbins' Rule 35(c) Motion, and accordingly affirm the court of appeals as well.

Justice RICE dissents, and Chief Justice MULLARKEY and Justice BENDER join in the dissent.

RICE, J., dissenting.

The majority essentially concludes that the common law doctrine of laches survives the General Assembly's enactment of time limitations for collateral attacks upon trial judgments in section 16–5–402, C.R.S. (2004). Thus, even though the statute expressly provides that there is "[n]o limit" on when a felon may collaterally attack a class one conviction, the majority holds that the defendant is time-barred by operation of laches. Since I conclude that the express, unambiguous, plain language of section 16–5–402 evidences the General Assembly's intent to abrogate the common law doctrine of laches as applied to collateral attacks on class one felony convictions, I respectfully dissent.

In construing statutes, this Court does not make policy decisions, but must give effect to the intent of the General Assembly, looking first to the plain language of the statute at issue. E.g., Vigil v. Franklin, 103 P.3d 322, 327 (Colo.2004); Farmers Ins. Exch. v. Bill Boom Inc., 961 P.2d 465, 469 (Colo.1998). Even "[i]n the face of statutory silence, questions of interpretation are governed by legislative intent." Williams v. White Mountain Constr. Co., Inc., 749 P.2d 423, 428 (Colo. 1988) (citing Johnston v. City Council, 177 Colo. 223, 493 P.2d 651 (1972)). Ambiguity generally exists only when at least one of the statute's terms is susceptible to multiple meanings. In re 2000–2001 Dist. Grand Jury in and for First Jud. Dist., 97 P.3d 921, 924 (Colo.2004) (citing Mountain City Meat Co. v. Oqueda, 919 P.2d 246, 252–53 (Colo. 1996)).

When the statute is unambiguous on its face, this Court need not look beyond the plain language, e.g., Frazier v. People, 90 P.3d 807, 810 (Colo.2004), because " 'if courts can give effect to the ordinary meaning of the words adopted by a legislative body, the statute should be construed as written since it may be presumed that the General Assembly meant what it clearly said,' " Pierson v. Black Canyon Aggregates, Inc., 48 P.3d 1215, 1218–19 (Colo.2002) (quoting Resolution Trust Corp. v. Heiserman, 898 P.2d 1049, 1054 (Colo.1995)). Also, "[i]f ... a statute can be construed and applied as written, the legislature's silence on collateral matters is not this [C]ourt's concern ...." In re 2000–2001 Dist. Grand Jury, 97 P.3d at 924 (citing PDM Molding, Inc. v. Stanberg, 898 P.2d 542, 545 (Colo.1995)).

When it acts, the General Assembly is presumed to be aware of existing, applicable case law. E.g., Leonard v. McMorris, 63 P.3d 323, 331 (Colo.2003). Of course, the General Assembly may modify or abrogate the common law, but " 'it must manifest its intent either expressly or by clear implication,' " Vigil, 103 P.3d at 327 (quoting Vaughan v. McMinn, 945 P.2d 404, 408 (Colo.1997)), because " '[a] statute, general in its terms, is always to be taken as subject to ... the common law,' " Bradley v. People, 8 Colo. 599, 604, 9 P. 783, 786 (1886) (quoted in

*Vigil,* 103 P.3d at 327). Thus, although subject to strict construction, a statute need not expressly abrogate or modify the common law to affect a change; the General Assembly must provide only a " 'clear expression of intent' " to do so. *Vaughan,* 945 P.2d at 408 (quoting *Kristensen v. Jones,* 195 Colo. 122, 124, 575 P.2d 854, 855 (1978)); *see also Colorado State Bd. of Pharmacy v. Hallett,* 88 Colo. 331, 335, 296 P. 540, 542 (1931) (General Assembly may repeal common law either expressly or by enactment of inconsistent statute).

Section 16–5–402 enumerates time limitations for collateral attacks upon trial judgments. However, relevant here, "class 1 felonies" have "[n]o limit." § 16–5–402(1). Thus, following the plain meaning of the statute's express language as written, *see, e.g., Pierson,* 48 P.3d at 1218–19, a defendant convicted of a class one felony is not limited to a specific time period within which to raise a collateral attack upon his conviction; necessarily, a convicted class one felon may raise such a collateral attack at any time.

Despite the statute's plain meaning, the majority concludes that the phrase "[n]o limit" actually means no limit in addition to that already imposed by common law laches because "there is no express implication that the equitable doctrine of laches was abrogated by the enactment of section 16–5–402." Maj. op. at 390. I have difficulty imagining a more obvious instance of the General Assembly clearly expressing its intent to abrogate the common law. With presumed knowledge of this Court's established laches case law, *see, e.g., Leonard,* 63 P.3d at 331, the General Assembly spoke with exactitude, unequivocally saying that upon enactment of section 16–5–402, class one felons are not time-barred, that is they face no time limit when collaterally attacking their convictions. By doing so, the General Assembly evidenced by clear implication its intent to abrogate the common law doctrine of laches as a time limitation on a class one felon's ability to collaterally attack his conviction. *See, e.g., Vigil,* 103 P.3d at 327.

Despite the fundamental rule of statutory construction that the General Assembly may abrogate or modify the common law either expressly or by clear implication, *see, e.g., id.,* the majority requires the General Assembly to abrogate laches "explicitly" because it has done so with the common law elsewhere in criminal statutes. *See* maj. op. at 390 (citing § 18–1–104(3), C.R.S. (2004) ("Common-law crimes are abolished and no conduct shall constitute an offense unless it is described as an offense in this code or in another statute of this state ....")). Yet, such a requirement imposes upon the General Assembly an affirmative duty in drafting and enacting criminal statutes that this Court has never before required.

Had the General Assembly intended to time-bar collateral attacks by class one felons, it easily could have imposed a limitations period, as it did for petty offenses, misdemeanors, and all non-class one felonies. § 16–5–402(1). Moreover, had it so intended, the General Assembly certainly could have adopted a more flexible limitation for class one felonies modeled after the common law doctrine of laches. Based upon the plain language of the statute, however, the General Assembly clearly intended neither limitation. By section 16–5–402(1)'s express terms, class one felons face "[n]o limit" on when they may raise a collateral attack on their convictions. Thus, the majority, in my view, replaces the General Assembly's reasoned policy decision with that of its own.

I further find it improper to consult the statute's legislative history, as the statute is clear and unambiguous. Nevertheless, since the statute does not expressly negate application of laches, the majority finds it necessary to examine the legislative history to determine the General Assembly's intent. Maj. op. at 389. To my knowledge, however, this Court has never before gone so far as to find an ambiguity from nothing more than mere statutory silence. *See, e.g., In re 2000–2001 Dist. Grand Jury,* 97 P.3d at 924–25 (section 16–5–205.5's silence on named party's ability to obtain grand jury record by discovery not ambiguous, and therefore, Court did not look beyond statute's plain language); *see also Cheyenne Mountain Sch. Dist. No. 12 v. Thompson,* 861 P.2d 711, 715 (Colo.1993) (In a contract, "[s]ilence does not by itself necessarily create ambiguity as a

matter of law."). Such restraint was prudent: a statute's silence on a particular issue easily could be used to manufacture ambiguity where none exists in practically any case involving statutory construction.

Even with reference to the statute's legislative history, I fail to understand how the majority can disregard the plain language of section 16–5–402(1). Indeed, the majority quotes a hearing witness stating that " 'there is no statute of limitations against a class one felony,' " prompting one lawmaker to express his concern that "the problem of delay" would persist. Maj. op. at 389 (quoting Audio tape: Hearing on S.B. 262 Before the House Committee on the Judiciary, 53rd Gen. Ass., 1st Reg. Sess. (Colo.1981) (statements of Rep. Bev Scherling and Otto Moore, Assistant Dist. Attorney, Denver County) (on file with Colorado State Archives)). The legislative history demonstrates that the General Assembly ultimately made a policy decision that while some crimes should trigger a statutory time limitation on collateral attacks, class one felonies should not.

In conclusion, finding the statutory language clear and unambiguous, I would apply section 16–5–402 as written, and hold that the General Assembly clearly intended no time limit on a class one felon's ability to collaterally attack his conviction, thereby abrogating the common law doctrine of laches. If it agrees with the majority that class one felons are limited by how long they can collaterally attack trial judgments, then the General Assembly and not this Court should amend section 16–5–402 to add a statute of limitations.

I am authorized to say Chief Justice MULLARKEY and Justice BENDER join in the dissent.