23CA0482 Peo v Selders 05-07-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0482
Mesa County District Court No. 14CR743
Honorable Valerie J. Robison, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Kyle Dean Selders,

Defendant-Appellant.

ORDERS AFFIRMED

Division I
Opinion by JUDGE J. JONES
Lum and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 7, 2026

Philip J. Weiser, Attorney General, Katharine J. Gillespie, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Julieanne Frachione, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Kyle Dean Selders, appeals the postconviction court's order granting the prosecution's Crim. P. 35(a) motion to correct an illegal sentence and its order imposing a legal sentence. He contends that the correction of his illegal sentence violated his constitutional right to due process or, alternatively, that the prosecution's request to correct the illegal sentence is barred by the doctrine of laches.  We affirm.

## I.    Background

¶ 2    In 2015, Selders pleaded guilty to an added count of class 3 felony sexual assault on a child by one in a position of trust (victim less than fifteen years of age).  In exchange, the prosecution agreed to dismiss the original charges.  The district court sentenced Selders to ten years on sex offender intensive supervision probation (SOISP), with two years in community corrections and ninety days in jail.

¶ 3    Thereafter, Selders was successfully discharged from community corrections and sex offense specific treatment, and his probation officer periodically sought to modify his probation conditions to be less restrictive.  At some point, the officer

1

requested, and the court granted, the modification of his probation from SOISP supervision to non-SOISP supervision.

¶ 4 In 2022, while Selders was still on probation, the prosecution filed the underlying Crim. P. 35(a) motion, arguing that the determinate ten-year SOISP sentence was illegal and that the applicable statute required the imposition of an indeterminate twenty-year-to-life SOISP sentence for a class 3 felony sex offense. Selders conceded that his original sentence was illegal but argued that the court should not correct it because the prosecution's request was barred by the doctrine of laches and a sentence correction would violate his due process right to an expectation of finality in the original sentence.

¶ 5 The postconviction court granted the motion, finding that the original ten-year SOISP sentence wasn't authorized by law, that it must be corrected, and that an illegal sentence can be corrected at any time. The court then imposed the required indeterminate twenty-year-to-life SOISP sentence for Selders's sexual assault on a child by one in a position of trust conviction.

## II. Legal Authority and Standard of Review

¶ 6     It is the General Assembly's prerogative to prescribe punishments. *Snedeker v. People*, 2025 CO 10, ¶ 10. "A court may not impose a sentence that is inconsistent with the terms specified by statutes." *People v. Dist. Ct.*, 673 P.2d 991, 995 (Colo. 1983). "A sentence which is beyond the statutory authority of the court is illegal." *Id.*; *see also Tennyson v. People*, 2025 CO 31, ¶ 25 ("[A]n illegal sentence includes a sentence that is not authorized by law because it fails to comply *in full* with statutory requirements."). An illegal sentence is void, which means it is as if it never existed. *Snedeker*, ¶ 16.

¶ 7     A court has an affirmative duty to correct an illegal, void sentence. *See Whiteaker v. People*, 2024 CO 25, ¶ 28 ("When such error occurs, we have 'the power *and the duty* to correct' the error." (quoting *Lucero v. People*, 2012 CO 7, ¶ 20)); *People v. Rockwell*, 125 P.3d 410, 414 (Colo. 2005). A court may correct a sentence not authorized by law "at any time." Crim. P. 35(a); *see also Snow v. People*, 2025 CO 32, ¶ 24 ("[A]n illegal sentence is correctable at any time," and "Colorado jurisprudence allows — and, in fact requires — courts to correct an illegal sentence without any time

3

limitation."). An illegal sentence may be corrected when requested by the prosecution or the defendant or upon the court's own motion. *See People v. White*, 179 P.3d 58, 61 (Colo. App. 2007).

¶ 8 We review de novo the legality of a sentence. *Magana v. People*, 2022 CO 25, ¶ 33. We also review de novo the interpretation of the rules of criminal procedure, *see People v. Corson*, 2016 CO 33, ¶ 44, and a constitutional challenge to a sentencing determination, *see Sharrow v. People*, 2019 CO 25, ¶ 27.

### III. Selders's Original Sentence was Illegal

¶ 9 Sexual assault on a child by one in a position of trust committed against a victim less than fifteen years of age is a class 3 felony, *see* § 18-3-405.3(2)(a), C.R.S. 2025, and a sex offense, *see* § 18-1.3-1003(5)(a)(V), C.R.S. 2025. If a court imposes probation for a conviction of a class 3 felony sex offense, it must sentence the sex offender to an indeterminate term of twenty years to life on SOISP. *See* §§ 18-1.3-1003(4), 18-1.3-1004(2)(a), C.R.S. 2025.

¶ 10 Accordingly, Selders's original ten-year SOISP sentence wasn't authorized by law.

IV.    Selders's Due Process Rights Weren't Violated

¶ 11    Nevertheless, Selders contends that the postconviction court violated his constitutional due process rights by granting the prosecution's Crim. P. 35(a) motion and imposing a legal sentence because (1) he had developed a constitutionally protected expectation of finality in the original, illegal ten-year SOISP sentence; or (2) the correction of his original, illegal sentence shocks the conscience.

¶ 12    As a threshold matter, the People argue that we shouldn't address Selders's due process claim because he didn't raise the argument in his objection to the Crim. P. 35(a) motion.  *See People v. Salazar*, 964 P.2d 502, 507 (Colo. 1998) ("[I]ssues not raised in or decided by a lower court will not be addressed for the first time on appeal.").

¶ 13    We agree with the People that, while mentioned in his objection to the motion, Selders didn't present a developed due process argument.  But in the interest of judicial economy, we choose to address Selders's appellate due process argument.

### A. Selders Didn't Develop an Expectation of Finality in his Illegal Probationary Sentence

¶ 14 Among other things, the Due Process Clause provides heightened protection against government interference with certain fundamental rights. *Washington v. Glucksberg*, 521 U.S. 702, 719-20 (1997). Specifically, due process protections are extended to those fundamental rights that are deeply rooted in this nation's history and tradition and which are carefully described. *Id.* at 720-21; *see also Lujan v. Colo. State Bd. of Educ.*, 649 P.2d 1005, 1015 n.7 (Colo. 1982) ("Fundamental rights are essentially those rights which have been recognized as having a value essential to individual liberty in our society."). Courts must be reluctant to recognize new fundamental rights and must exercise the utmost care when doing so. *Glucksberg*, 521 U.S. at 720; *see also Robertson v. City & County of Denver*, 874 P.2d 325, 340 (Colo. 1994) (Vollack, J., concurring) ("The United States Supreme Court has found only a limited group of fundamental rights and has been reluctant to expand the list of fundamental constitutional rights.").

¶ 15 Selders asserts that the court's correction of his illegal ten-year SOISP sentence to a legal twenty-year-to-life SOISP

sentence violated his due process right to the expectation of finality in the original, illegal sentence.  He relies heavily on *Jordan v. United States*, 235 A.3d 808, 811, 814-21 (D.C. 2020), for the propositions that (1) in certain circumstances, a defendant can develop an expectation of finality in a sentence such that a later, upward revision of the sentence would violate due process; and (2) such an expectation of finality can crystalize even as to illegal sentences.

¶ 16     Two Colorado opinions discussed, but didn't resolve, this issue.  In *People v. Bassford*, 2014 COA 15, ¶¶ 33, 50 n.6, a division of this court suggested that due process could protect a defendant's right to the expectation of finality in a sentence, but it declined to address the undeveloped argument.  And in *People v. Wiseman*, 2017 COA 49M, ¶¶ 31-33, another division rejected the defendant's argument that his due process claim implicated a fundamental right to the expectation of finality in a sentence, instead evaluating the claim under the shock-the-conscience test.  But the concurring opinion did acknowledge that, while not applicable in that case, there could be other situations in which a defendant could successfully assert a substantive due process

claim based on the expectation of finality in a sentence. *Id.* at ¶¶ 58-63 (Berger, J., concurring).

¶ 17 Assuming, without deciding, that due process can afford a defendant the right to an expectation of finality in an illegal sentence, we aren't convinced that Selders's expectation of finality in his original, illegal ten-year SOISP sentence crystalized such that the correction of the sentence violated due process.

¶ 18 "A defendant . . . does not automatically acquire a vested interest in a shorter, but incorrect sentence." *United States v. Davis*, 112 F.3d 118, 123 (3d Cir. 1997). Rather, a defendant's due process right to the expectation of finality in a sentence will crystalize in only rare or extreme cases. *See id.* ("It is only in an extreme case that a later upward revision of a sentence is so unfair that it is inconsistent with the fundamental notions of fairness found in the due process clause."); *DeWitt v. Ventetoulo*, 6 F.3d 32, 36 (1st Cir. 1993) (concluding that the underlying — and "very unusual" — case fell within "the very rare exception to the general rule that courts can, after sentence, revise sentences upward to correct errors"); *Jordan*, 235 A.3d at 821 (Due process protections

apply in "the rare or extreme case in which a defendant's expectation of finality has crystalized.").

¶ 19    In determining whether a defendant's situation constitutes the extreme case where an expectation of finality in a sentence has crystalized, courts have identified certain nonexclusive factors that should be considered, including (1) the extent of the delay in correcting the sentence; (2) the defendant's contribution to the mistaken sentence; (3) the prosecution's culpability in the mistaken sentence and its diligence in seeking to correct the sentence; (4) the reasonableness of the defendant's expectation of finality in the sentence; and (5) the prejudice to the defendant in correcting the sentence.  *See DeWitt*, 6 F.3d at 35; *Jordan*, 235 A.3d at 821-22.

¶ 20    We agree with Selders that the nearly eight-year delay in correcting his illegal ten-year SOISP sentence and the prosecution's failure to seek correction of the sentence during any of the postconviction opportunities to do so weigh in favor of a conclusion that his expectation of finality in the original sentence had crystalized.  *See DeWitt*, 6 F.3d at 36 (The defendant's expectation of finality in his sentence crystalized such that the correction of the sentence violated due process, in part because of "the multi-year

9

period between the suspension and the reimposition of sentence . . . [and] the unusual tardiness of the state in failing to correct the error."); *Jordan*, 235 A.3d at 822-23, 827 (concluding that the defendant's expectation of finality in his sentence crystalized such that the correction of the sentence violated due process, in part because of the sixteen-year gap between the imposition of the defendant's sentence and the motion to increase the sentence, and the government's missed opportunities over those sixteen years to correct the sentence).

¶ 21    But we conclude that other factors weigh more heavily against a conclusion that Selders's situation constitutes an "extreme case" such that he developed a reasonable expectation of finality in his original sentence and would be entitled to due process protection. *See Jordan*, 235 A.3d at 822 ("No one factor is dispositive, and all must be analyzed and balanced to determine whether a defendant's expectation of finality in his or her sentence has crystalized, such that it is protected by the Due Process Clause.").

¶ 22    Most importantly, Selders hasn't cited, nor have we found, any authority recognizing a due process right to the expectation of finality in a probationary sentence, much less a probationary

sentence that the defendant was still serving when the prosecution sought to correct the sentence. Instead, a defendant's expectation of finality has been recognized in cases that involved *prison* sentences. *See Breest v. Helgemoe*, 579 F.2d 95, 101 (1st Cir. 1978) ("After a substantial period of time . . . , it might be fundamentally unfair, and thus violative of due process for a court to alter even an illegal sentence in a way which frustrates a prisoner's expectations by postponing his parole eligibility or release date far beyond that originally set."); *Jordan*, 235 A.3d at 825 ("[A] due process violation [can arise] even though [the defendant's] sentence was increased while he was incarcerated because such a due process right does not mature only when an individual is released from prison, i.e., it is not linked only to a defendant's liberty interest upon release from incarceration."); *DeWitt*, 6 F.3d at 35-36.

¶ 23 Probation is a sentencing alternative to a prison sentence. *See* §§ 18-1.3-1004(2)(a), 18-1.3-104(1)(a), C.R.S. 2025. If a defendant fails to comply with the conditions of probation, the probationary sentence is subject to revocation, and, if revoked, the defendant is subject to resentencing to any sentence that might originally have

11

been imposed.  *See* §§ 18-1.3-1010(2), 16-11-205, 16-11-206, C.R.S. 2025; *Byrd v. People*, 58 P.3d 50, 55 (Colo. 2002).  Thus, probation serves as "a conditional suspension of what would otherwise have been a harsher sentence."  *Byrd,* 58 P.3d at 55-56; *see Veith v. People*, 2017 CO 19, ¶ 17; *Holdren v. People*, 452 P.2d 28, 30 (Colo. 1969).

¶ 24    Selders fails to explain why he developed a reasonable expectation of finality in a probationary sentence that he was still serving, that was subject to revocation, and that, if revoked, would have been replaced with a new sentence, possibly to prison.  *See Holdren*, 452 P.2d at 30 (A probationer "is charged with the knowledge that a breach of probationary terms will most assuredly result in a revocation of probation and a subsequent sentence."); *People v. Zimmerman*, 616 P.2d 997, 999 (Colo. App. 1980) ("[A] criminal defendant is presumed to know that the violation of any term of his probation may result in revocation."); *cf. People v. Chavez*, 32 P.3d 613, 614 (Colo. App. 2001) ("A defendant can have no legitimate expectation of finality in a sentence that, by statute, is subject to further review and revision.  For this reason, [extra-jurisdictional] courts have rejected double jeopardy claims where,

12

for instance, statutes have authorized the imposition of more severe sentences following revocation of probation . . . ." (citations omitted)).

¶ 25 In this regard, Selders does assert that the transition of his sentence from community-based SOISP supervision to community-based non-SOISP supervision is analogous to cases where an incarcerated defendant was erroneously released from prison and due process was implicated by the defendant's reincarceration. *See DeWitt*, 6 F.3d at 35-36; *Jordan*, 235 A.3d at 825-26. We aren't persuaded that the situations are analogous. *See Veith*, ¶¶ 14, 17 ("[A] probationary sentence is generally viewed as a more lenient sentencing alternative to a prison sentence," and, therefore, "the receipt of probation is a privilege, not a right."). Indeed, Selders hasn't explained how the conditions of his community-based supervision will impede his ability to continue his day-to-day life activities to a significant extent, much less to the extent that would result from incarceration.

¶ 26 Furthermore, Selders argues that he was "severely prejudiced by the correction" of his sentence because "[he] has been placed back on SOISP supervision — 'the highest level of supervision'

provided to probationers — for an indeterminate future period."
Because every defendant will be prejudiced by the upward
correction of an illegal sentence, the correction of Selders's sentence
to reflect an indeterminate, rather than determinate, term isn't a
rare circumstance giving rise to a due process violation. *See*
*Wiseman,* ¶ 62 (Berger, J., concurring) ("[G]iven the enhanced
requirements for a substantive due process claim, [the defendant]
cannot establish a substantive due process violation" because,
"[t]hough his expectations . . . of a determinate sentence will be
seriously frustrated by the imposition of an indeterminate sentence
. . . , his situation is different in kind from that of a prisoner who is
erroneously released from custody and spends a substantial
amount of time at liberty."). And we aren't convinced that Selders's
assertion, without record support, that he was placed back on
SOISP supervision is an extreme circumstance violating due
process.

¶ 27 In further support of his prejudice argument, Selders
highlights that, before the correction to his sentence, he discharged
the incarceration conditions of his probation terms, successfully
completed approximately eight years on SOISP, reunited with his

wife and children, started a business, supported his family, and became a valued member of the community. He doesn't, however, indicate that the correction of his sentence detrimentally affects the status of any of these personal and probationary accomplishments.[1]

¶ 28 Thus, we aren't persuaded that the prejudice to Selders rises to the level of extreme or rare circumstances violating due process. *See DeWitt*, 6 F.3d at 35-36 (The reincarceration of an inmate who "laid down new roots in society, acquir[ed] a job and reestablish[ed] family ties" during his erroneous release from prison was sufficiently prejudicial so as to violate due process.); *Jordan*, 235 A.3d at 824 (inmate who spent sixteen years in prison planning for life after his parole release was sufficiently prejudiced by the correction to his sentence and the resulting three-year delay of his parole eligibility date so as to violate due process).

¶ 29 For the foregoing reasons, we conclude that the correction of Selders's sentence didn't violate a fundamental due process right.

---

[1] In this regard, being required to continue on probation is much different than having to return to prison.

### B. The Prosecution's Motion to Correct Selders's Illegal Sentence Didn't Shock the Conscience

¶ 30 Selders alternatively argues that his due process rights were violated because the prosecution's Crim. P. 35(a) request to correct his original, illegal sentence shocked the conscience. We disagree.

¶ 31 The "shock the conscience" standard is typically employed "when determining whether governmental action violates due process rights." *Rosales-Mireles v. United States*, 585 U.S. 129, 137 (2018). "[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998); *see Wiseman*, ¶ 33.

¶ 32 "[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Lewis*, 523 U.S. at 849. Rather, "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* "The shock-the-conscience test is an extremely demanding one, and

16

challenges analyzed under it rarely succeed." *Wiseman,* ¶ 34 (quoting *Gonzalez-Fuentes v. Molina,* 607 F.3d 864, 885 (1st Cir. 2010)).

¶ 33    We aren't convinced that the prosecution's request to correct the original, void ten-year SOISP sentence after Selders successfully served most, but not all, of it rose to the level of a conscience-shocking intent to injure, rather than constituting simple negligence by the prosecution in belatedly ensuring the imposition of a legal sentence. *See Bassford,* ¶ 30 ("[O]ur supreme court has noted that imposing a legal sentence in place of an illegal one 'protects society's legitimate interest in adequate sentences for convicted criminals and in the overall uniformity of sentences imposed on similarly situated violators.'" (quoting *Dist. Ct.,* 673 P.2d at 997)); *cf. Wiseman,* ¶ 61 (Berger, J., concurring) ("[I]t is virtually impossible to meet the 'shocks the conscience' test prescribed by the Supreme Court in *Lewis* . . . when an illegal sentence is corrected while the defendant remains in custody.").

¶ 34    We further conclude that the prosecution's action wasn't necessarily egregious or outrageous because its filing of a Crim. P. 35(a) motion wasn't needed to subject Selders's illegal sentence to

correction. Instead, as noted above, the court had an affirmative duty to correct Selders's illegal sentence on its own motion at any time. *See White*, 179 P.3d at 61.

### C. The Court Properly Corrected the Original, Illegal Sentence

¶ 35 Accordingly, we conclude that the court correctly fulfilled its obligation to vacate Selders's illegal, void ten-year SOISP sentence and to resentence him to twenty years to life on SOISP — the only probationary sentence that was statutorily authorized for a class 3 felony sex offense. *See* § 18-1.3-1004(2)(a); *see also Wiseman*, ¶ 24 ("Because [the defendant's] original and revised [determinate] sentences were both illegal, a remand for the imposition of a 'legal' indeterminate sentence . . . [wa]s required.").

### V. The Doctrine of Laches Doesn't Bar the Correction of Selders's Illegal Sentence

¶ 36 Selders also asserts that the prosecution's request to correct his original, illegal sentence was barred by the doctrine of laches. We disagree.

¶ 37 The People argue that Selders waived this issue because he failed to secure a ruling from the court on his laches argument. *See People v. Young*, 923 P.2d 145, 149 (Colo. App. 1995). While true,

18

we nevertheless choose to address the court's implicit denial of the claim.

¶ 38     "Laches is an equitable doctrine that may be asserted to deny relief to a party whose unconscionable delay in enforcing [their] rights has prejudiced the party against whom relief is sought." *Robbins v. People*, 107 P.3d 384, 388 (Colo. 2005).

¶ 39     In *Wiseman*, a division of this court rejected the application of laches to bar the correction of an illegal sentence and the imposition of a legal sentence. *Wiseman*, ¶¶ 40-44. In so holding, the division was persuaded by the reasoning of extra-jurisdictional authority, noting the following:

- "[C]orrection of [the defendant's] sentence[,] even though delayed, must be allowed in order to carry out the legislative purpose in establishing minimum sentences and to preclude other defendants from asserting a vested right in an illegal sentence." *See id.* at ¶ 42 (quoting *State v. Price*, 715 P.2d 1183, 1186 (Alaska Ct. App. 1986)).

- "Defendants and their counsel should not be encouraged to remain silent while judges and prosecutors negligently cooperate in the imposition of an illegal sentence." *See id.* (quoting *Price*, 715 P.2d at 1186).

- Correction of an illegal sentence must be permitted "[i]n order to ensure that the law will be carried out, and that judicial negligence will not result in disparate and

19

unequal sentencing." *See id.* (quoting *Price*, 715 P.2d at 1186).

- "To follow the argument of the defendants would be to affirm the imposition of illegal sentences and to violate our duty to correct illegal sentences whenever that illegality is discovered by the court." *See id.* at ¶ 43 (quoting *United States v. Romero*, 642 F.2d 392, 396 (10th Cir. 1981)).

- "The doctrine of laches is an equitable remedy which is applied to promote justice. Needless to say, justice is not fostered by preventing the court from correcting an illegal sentence." *See id.* (quoting *Romero*, 642 F.2d at 396).

- "A laches argument 'is not available in the context of a motion to correct an illegal sentence because an illegal sentence can be corrected 'at any time.'" *See id.* (quoting *Greco v. State*, 48 A.3d 816, 831 (Md. 2012)).

¶ 40     We are persuaded by *Wiseman* and the reasoning of the cases on which it relies. Moreover, it would be nonsensical to apply the doctrine of laches to bar a party's request to correct an illegal sentence when the court has an affirmative duty to do so on its own motion even in the absence of such request. *See id.* ("The fact that the government may fail to exert due diligence in presenting this issue to the trial court may not prevent the trial court from fulfilling its judicial obligations" to correct an invalid sentence. (quoting *Romero*, 642 F.2d at 396)).

¶ 41    Thus, we conclude that the postconviction court didn't err by declining to apply the doctrine of laches to bar the prosecution's Crim. P. 35(a) motion to correct Selders's illegal sentence.

## VI.    Disposition

¶ 42    The orders are affirmed.

JUDGE LUM and JUDGE MEIRINK concur.